STATE OF IOWA, appellee, v. ROBERT EUGENE DWINELLS, appellant.

No. 51918.

November 15, 1966.

Ben E. Kubby, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, Ray Fenton, County Attorney, and Claude Freeman, Assistant County Attorney, all of Des Moines, for appellee.

BECKER, J.—Defendant and Owen James Ashland were indicted by the Polk County Grand Jury for robbery with aggravation, Code, 1966, sections 711.1 and 711.2. After separate jury trial, defendant was found guilty. He appeals.

The State's evidence showed that Warren Stump, a special agent for the State Bureau of Criminal Investigation was in the vicinity of S.W. 9th Street and Army Post Road in the City of Des Moines at about 11 p.m. February 17, 1965. He noticed a car behind him turn off its lights and park. He went around a couple of blocks, saw the car parked on S. W. 10th and West Streets had Minnesota license plates, then drove around a few more blocks and stopped at an oil station at 1010 Army Post Road where the attendant told him he had just been robbed. He contacted the State Police Radio and gave them a description of the automobile as a two-tone Oldsmobile. He did not know the license numbers.

 Thus alerted the policeman at Indianola, some 17 miles south of Des Moines, together with a highway patrolman and other police officers, proceeded to the north edge of that city to watch for a red and white Oldsmobile with Minnesota license plates. When a car fitting that description came along they followed it to the home of Lt. Dan Foster of the Iowa Highway Patrol. Defendant, the driver of the car, went up on the porch. About that time other police vehicles came up. Defendant and his companion were held at gunpoint and searched. The search of both the person of the defendant and his car was made by Lt. Foster who had come out of the house. Lieutenant Foster testified that at this time he told defendant he was a suspect in a robbery and they were being detained to be checked out. A gun box was found in the car. Lieutenant Foster asked defendant where the gun was. Defendant told him it was in the box. Lieutenant Foster then went back to the car and saw

a gun butt sticking up from behind the kickplate or cowl which was behind the glove compartment. Tucked in beside the gun was a roll of 24 one dollar bills. The search also turned up a bank money sack containing $54.65 in change from under the dashboard (later identified by the gas station attendant as the one taken from him that night), and a number of .22 caliber cartridges, both long and short, in the glove compartment.

The car was not an Oldsmobile but a '55 Buick, it was variously described as two tone and three tone, black top, red body and white at the bottom. The oil station attendant identified Ashland, defendant's companion, as the person who robbed him and stated that Ashland was alone; the attendant saw no one else.

Defendant took the stand and said that he met his companion about three weeks before in Minneapolis, that Ashland left him for some time earlier in the evening and took the car, that he knew nothing of the gun being out of the box or the money and money bag in the car, that he bought the gun (clearly an unusual type) for his brother, a gun collector, that they were going to Kansas City when they inquired as to proper roads to get there. They were told where the highway patrolman lived and were at his home to make inquiry as to the way to Kansas City when apprehended.

These contending positions were submitted to the jury who found defendant guilty. He assigns four errors for reversal which raise two principal contentions.

I. The first concerns the admission of evidence as the result of a claimed illegal search and seizure. No motion to suppress evidence was made. Three officers were allowed to testify in detail without objection concerning both the search of defendant and his car. The fruits of this search, to wit, the .22 caliber revolver, the shells, the money and the money bag were all offered in evidence and received without objection. During this testimony by cross-examination defense counsel emphasized that at the arrest and search defendant cooperated with the officers and repeatedly professed ignorance and innocence of any wrongdoing.

It was not until the cross-examination of Lt. Foster that defendant sought to raise the issue of unconstitutional search and seizure. Defense counsel sought to ask Lt. Foster if he had a search warrant. He was stopped by an objection. It was at this point, in the absence of the jury, that defense counsel first charged that there had been an illegal search and seizure and the prosecution was attempting to use the fruits of an illegal search. The court refused to allow defendant to inject the question of a search warrant into the case ruling that it was a legal question, not a fact question; thus sustaining the State's position that the matter was untimely raised.

After the constitutional issue was raised Lt. Foster testified that after telling defendant why they were stopped he asked defendant's permission to search the car and Dwinells told him to go ahead and search it, that he, defendant, had no objection to their stopping them or interrogating them; also that Dwinells was very cooperative throughout the entire matter.

At the close of the State's case, defendant for the first time moved to withdraw the evidence secured by the search from the jury's consideration.

State asserts that there was no error in allowing evidence turned up by reason of the search to stand for three reasons: 1. Failure to move to suppress the evidence before trial and failure to object to similar evidence by two prior witnesses during trial constituted a waiver of any right to question the search and seizure or use of the fruits thereof. 2. The search and seizure was incident to a lawful arrest and therefore legal, and 3. There had been freely given consent to the search and seizure.

It is probable that the facts here would justify a finding that the search was incident to a lawful arrest. State v. Rye, 145 N.W.2d 608, opinion filed October 18, 1966 (withdrawn, see 260 Iowa——, 148 N.W.2d 632, to same effect on that point), State v. Raymond, 258 Iowa 1339, 142 N.W.2d 444, and Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed.2d 777. The assertion here that consent to search was freely given is more tenuous.

See State v. Shephard, 255 Iowa 1218, 124 N.W.2d 712, and cases cited, where the effect of holding a gun on a person

at the time the claimed consent is obtained is noted as a factor. We give no further attention to either of these two contentions as we consider that this matter should turn on the State's first point.

"The right to suppress evidence may be waived and objection to evidence must be timely. State v. Gillam, 230 Iowa 1287, 1289, 300 N.W. 567, People v. Ferguson, 376 Mich. 90, 135 N.W.2d 357." Dunek v. District Court of Lee County, 258 Iowa 673, 676, 140 N.W.2d 372.

Here it is apparent that there were factors in the State's evidence to corroborate defendant's testimony pointing to innocence. Not the least of such factors was defendant's cooperative attitude with the officers and apparent willingness to have the car searched. For this reason, or for whatever other reason experienced and competent defense counsel may have had in mind, the State was allowed without objection to go into the entire matter of the search and seizure until State's third witness on the subject. The fruits of the search were all admitted in evidence, also without objection. The State's case was substantially complete before the question was raised.

In this situation there was a clear and irretrievable waiver of the right to raise the question. Defendant cannot be allowed to observe the effects of evidence and object to its admissibility only after counsel concludes that on the whole it is more harmful than beneficial.

We believe that such conclusion under the facts here are well within the maxims laid down by the United States Supreme Court in Henry v. State of Mississippi, 379 U. S. 443, 85 S. Ct. 564, 13 L. Ed.2d 408. There is a legitimate state interest in trial rules procedurally fair to both sides.

Counsel suggests that defendant should not be punished by his failure to object sooner. This is not the case here. A study of the record indicates that a professional judgment as to trial tactics was required and competently made. The validity of that judgment is not impugned simply by the fact that the result was unsuccessful. See State v. Post, 255 Iowa 573, 580, 123 N.W.2d 11.

■ II. Defendant's second contention is that the evidence was insufficient to sustain the verdict. We have examined the record carefully and cannot agree "that there is absolutely no evidence in this case upon which to sustain a conviction of this defendant." State v. Stodola, 257 Iowa 863, 865, 134 N.W.2d 920, succinctly states the manner of review of this facet of the case: "The rules governing our consideration of a claim of insufficient evidence to support a conviction need hardly be stated. Of course the evidence is to be viewed in the light most favorable to the State. It is the fact-finder's function (usually the jury's), not ours, to decide disputed fact questions. Its finding of guilt is binding upon us unless we are satisfied it is without substantial support in the evidence or is clearly against the weight thereof." (Cases cited.)

■ There was no direct evidence that defendant was at or near the scene of the robbery at the time it occurred. The State's case is bottomed on the theory that he is guilty as an accomplice. As such he is prosecuted as a principal, Code, 1966, chapter 688.

■ "In State v. Jensen, 245 Iowa 1363, 1373, 66 N.W.2d 480, 485, is this language: 'Proof of defendant's possession of recently stolen property when it is also shown that the larceny took place in connection with a burglary is sufficient to warrant a conviction of breaking and entering.' (Authorities cited.) 'Also we have said that even though the possession be denied or explained, the truthfulness of such denial or explanation is for the jury. State v. Marshall, 105 Iowa 38, 41, 74 N.W. 763, 764.' " State v. Hobbs, 252 Iowa 439, 448, 107 N.W.2d 242.

The same rules apply to recent possession of property stolen by robbery.

The jury could properly find that defendant was with the identified robber both before and after the robbery; the gun used in the robbery was purchased by defendant the day before the crime, defendant's car was seen near the scene of the robbery practically at the time it was occurring, the gun and money from the robbery were found in defendant's car which was in his possession some 40 minutes after the robbery, the gun and some money were tucked behind the cowl, the money sack with change in it was under the dash. A jury question was presented.

It is true that certain circumstances inherent in the State's case and defendant's own testimony raise serious questions which must be resolved before the verdict of guilty is justified. But these are fact questions for the jury. The validity of the jury system depends, to a large extent, on judicial restraint when the courts are asked to interfere with the jury's proper function; i.e., upon refusal to set the jury's verdict aside unless clearly unjustified. The acceptability and reconciliation of all the evidence and the credibility of all the witnesses, including defendant, was for the jury. We cannot say it erred in the discharge of its function.—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.