[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 840 
Defendants, Donald and Michael Perrin, brothers, each appeals from a judgment entered upon a jury verdict finding him guilty of violation of Penal Code section 459, burglary second degree.
Defendants used a crowbar to pry open an outer locked door at the Iran Restaurant in Fresno at approximately 3 a.m. *Page 841 
August 16, 1964. After entering, they pried open three inner locked doors to reach the bar area, where they forced a cash register and removed approximately $400. They proceeded to a storeroom-office and pried open a steel cabinet, taking approximately $1,200. They tried unsuccessfully to open a floor safe.
The Perrin brothers learned from Michael's wife, Susan, a waitress at the Iran Restaurant for two months prior to the burglary, that large sums of money were left on the premises in a locked liquor cabinet in the storeroom-office. Susan continued to work at the restaurant for approximately three weeks after the burglary was committed.
On September 19, 1964, Donald, Michael and Susan went to Phoenix, Arizona, and that night and on the 20th committed a number of burglaries. All three were taken into custody and booked at the Phoenix police station the following day. An officer by the name of Brady, who interrogated Donald and Michael, testified that at the outset he told each defendant he did not have to talk if he did not want to, that he had the right to have an attorney, and that anything he said could be used against him. Defendants made no request for an attorney, and talked willingly and freely.
Michael, interviewed first, talked about only the Phoenix burglaries, but Donald, who was next interviewed alone, voluntarily told Brady that he and Michael obtained $1,500 in the Iran Restaurant burglary in Fresno. Brady advised a police officer in Fresno, by telephone, that Donald Perrin had admitted a $1,500 burglary at the Iran Restaurant, and asked if such a burglary occurred. The Fresno officer confirmed the burglary, and requested a teletype report of the confessions. Armed with the information obtained from Fresno, Brady interviewed Michael and Donald together, and on this occasion Michael, as well as Donald, freely discussed the Iran burglary; both orally confessed and Michael also made a written confession. Brady testified that Michael signed the confession, but Michael, although admitting the handwriting in the body of the confession was his, denied that the signature, "Michael H. Perrin," at the end was his. He also disavowed his signature which appears in two other places in the body of the document, and his initials which appear in four places.
Each defendant took the witness stand and denied making any confession, but the jury resolved this conflict in the evidence against them, and understandably so. From the printed *Page 842 
word, defendants' testimony strikes us as being decidedly unconvincing.
Defendants also interposed an objection to any testimony by Officer Brady concerning their alleged confessions to the commission of the Iran burglary upon the ground that these confessions were purportedly given in the afternoon while Officer Brady advised them of their constitutional rights only before the morning questioning. In determining whether it was incumbent upon the interrogating officer to readvise defendants of their constitutional rights when interrogation was resumed in the afternoon, it is unnecessary for us to decide whether this procedure, as defendants contend, violated the principles laid down by the United States Supreme Court in Miranda v.Arizona, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. In Johnson v. New Jersey, 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772], the Supreme Court ruled thatMiranda is available only to a defendant whose trial had not begun as of June 13, 1966. Defendants' case was tried July 22, 1965. Defendants argue that, nevertheless, California courts should apply the Miranda rules retroactively.
[1] The principles enunciated in Miranda and Johnson,
including prospective application of Miranda, are controlling in the federal courts, but they are not necessarily definitive as to state courts. Although the states may not mollify the principles delineated in those two cases, they may apply them more stringently. [2] The specific question before us, whether the Miranda rules shall be applied retrospectively or prospectively in a state court, appears to be unresolved byJohnson. This proposition has been considered by several California appellate courts and the upshot of each is thatMiranda is not to be given retroactive application. (People
v. Lewis, 244 Cal.App.2d 325, 331 [53 Cal.Rptr. 108] (hearing denied); People v. Jones, 244 Cal.App.2d 378, 382 [52 Cal.Rptr. 924] (hearing denied); People v. Haynes, 244 Cal.App.2d 579, 583-584 [53 Cal.Rptr. 530] (hearing denied);People v. Salcido, 246 Cal.App.2d 450 [54 Cal.Rptr. 820].
[3a] In considering whether, aside from the requirements ofMiranda, the afternoon confessions of the Fresno crime were properly admitted, we start with the fact that defendants were advised of their constitutional rights within the rationale ofPeople v. Dorado, 62 Cal.2d 338 [42 Cal.Rptr. 169,398 P.2d 361], before questioning commenced in the morning. The constitutional admonitions delineated by the *Page 843 Dorado line of cases are to insure that a defendant understands his constitutional rights before he is interrogated. The record reflects that defendants had this requisite understanding before each waived his right to remain silent. [4] There is no requirement that the admonition relate to a particular question, a particular segment or interval of an interrogation, or to the discussion of a particular criminal act.
[3b] Since there is nothing in the record indicating that defendants wished to discontinue the interrogation in the afternoon, or that they had changed their minds about wanting an attorney, or that their free will was overcome by persuasion or chicanery, we conclude that the admonition, admittedly sufficient for the morning questioning, carried over into the afternoon session.
In addition to the foregoing questions raised by both defendants, each makes separate assignments of error.
[5] Michael contends that his confessions were improperly received in evidence before the corpus delicti of the crime of burglary was established. However, before his confession was admitted in evidence it was proved that a forcible entry of the Iran Restaurant occurred on August 19 and that approximately $1,600 was taken. While it is true, as Michael points out, the identity of the perpetrators of the burglary had not been established at that time, this is immaterial; the identity of the participant or participants in a crime is not a necessary element of the corpus delicti. (See People v. Cobb, 45 Cal.2d 158, 161 [287 P.2d 752]; People v. Westfall, 198 Cal.App.2d 598, 601 [18 Cal.Rptr. 356]; People v. Whitsett, 160 Cal.App.2d 652, 657 [325 P.2d 529].)
[6a] Michael also complains that the court improperly permitted testimony concerning burglaries committed in Phoenix, Arizona, and of other California burglaries, for a purpose other than to show pattern, scheme, design or intent. However, it was defense counsel who first questioned Officer Brady about the Phoenix burglaries and certain crimes committed in California. Apparently he intentionally brought to light defendants' admissions concerning numerous burglaries in order to convince the jury that defendants had been promised immunity from prosecution for crimes committed in California in return for freely admitting crimes committed in Arizona. Defendants' trial strategy failed to achieve its objective in the trial court, but that mistake in judgment cannot properly be made the basis for an appeal. *Page 844 
Michael contends his case was prejudiced by evidence concerning Donald's prior convictions. Here, again, defense counsel brought out the testimony to which exception is now being taken. At the outset, Donald had been charged with five prior felony convictions; he admitted two and the remaining three were stricken. Defense counsel asked Donald whether he had informed the officers that he was on parole for a robbery committed November 16, 1960, and also that he was convicted and sentenced to the California Youth Authority May 1, 1956. He explained the relevance of his questions thus:
"Your Honor, I put that request here to show the jury they had this boy charged with five priors, and the D.A. could not prove all of them."
[7] On cross-examination, the prosecuting attorney questioned Donald as to the nature of the crime evidenced by each conviction. This was proper, since it was within the scope of the direct examination; it was also proper as impeachment. (People
v. Frye, 218 Cal.App.2d 799 [32 Cal.Rptr. 699]; People v.De La Paz, 237 Cal.App.2d 81, 83 [46 Cal.Rptr. 614].) [6b]
Furthermore, it has not been demonstrated how or in what manner questioning Donald about his prior convictions prejudiced Michael, since there was no intimation that Michael was in any way involved in those crimes.
[8] Turning now to Donald's separate contentions on appeal, he first complains that his conviction rests upon the uncorroborated testimony of one man, Officer Brady, concerning information obtained behind closed doors. He alleges that "Brady succumbed to the temptation and opportunities to torture the facts or commit open perjury afforded by testimony on the making of an oral confession."
The substance of this assertion is simply that the jury should have believed Donald and Michael instead of Brady. After reading the record, we conclude the jury had good reason for the choice it made. To warrant the rejection by a reviewing court of statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or it must be such as to shock the moral sense of the court; it must be inherently improbable and such inherent improbability must plainly appear. (People v. Simpson,43 Cal.2d 553, 562 [275 P.2d 31]; People v. Coontz, 119 Cal.App.2d 276, 280 [259 P.2d 694]; People v. Swanson, 204 Cal.App.2d 169
[22 Cal.Rptr. 178]; People v. White, 43 Cal.2d 740, 747 [278 P.2d 9]; People v. Hickok, 230 Cal.App.2d 57
[40 Cal.Rptr. 687]; People v. Bodkin, *Page 845 196 Cal.App.2d 412, 415 [16 Cal.Rptr. 506]; People v. Carlson,73 Cal.App.2d 933, 939 [167 P.2d 812].)
[9] It is argued that since Michael's confession implicated Donald in the burglary the trial court committed reversible error in not ordering separate trials for each defendant, pursuant to the holding of People v. Aranda, 63 Cal.2d 518 [47 Cal.Rptr. 353,407 P.2d 265]. Donald concedes that no motion for separate trials was made in the trial court, but argues that underAranda the court should have made such an order on its own motion. His argument is ineffective, for two reasons. First,Aranda has not been applied retroactively; the opinion came down November 1965, while this action was tried in July 1965. The question of retroactivity is not novel. In People v.Williams, 239 Cal.App.2d 42, 45-46 [48 Cal.Rptr. 421], and inPeople v. Haynes, supra, 244 Cal.App.2d at pages 583-584, it was held that Aranda established new rules to be applied in trials occurring after Aranda was filed.
The second distinction between this case and Aranda is that here each defendant made an incriminating statement amounting to a confession that he participated in the crime for which they were being tried jointly. In Aranda the defendant who was entitled to a separate trial had made no incriminating statement, and the confession of his codefendant which inculpated him was highly prejudicial despite a cautionary admonition by the court. Under the facts of this case, particularly in the absence of a motion for separate trials, we find no reversible error stemming from a joint trial of the defendants.
The judgments are affirmed.
Conley, P.J., and Gargano, J., concurred. *Page 846