STATE of Iowa, Appellee,

v.

John Wayne DAVIS, Appellant.

No. 52763.

Supreme Court of Iowa.

April 9, 1968.

Everett H. Albers, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., David A. Elderkin, Asst. Atty. Gen., Ray A. Fenton, County Atty., for appellee.

LARSON, Justice.

On May 23, 1967, the Polk County Grand Jury returned an indictment charging the defendant, John Wayne Davis, with the crime of breaking and entering as defined in section 708.8 of the 1966 Code of Iowa. Subsequent to a plea of not guilty, trial was had by jury resulting in a verdict of guilty. The defendant was sentenced to not more than ten years in prison in the Men's Reformatory at Anamosa, Iowa. He appeals.

Acting upon a radio dispatch that a breaking and entering was in progress at Jay's Bakery in Des Moines, Iowa, several Des Moines policemen went to the bakery to investigate. Upon their arrival about 2:30 A.M. on April 14, 1967, they found one party in the bakery and the defendant crouched on the roof near the edge of the skylight on top of the building. Officer Dickerson told the defendant to stand up

with his hands in the air and to come down off the building. He and Officer Warrick then handcuffed him and took him to the front of the bakery where "he was advised of his rights" by Lieutenant Burns in the presence and hearing of several officers.

Officer Warrick testified that "Lieutenant Burns advised him [the defendant] that he was under arrest and charged with breaking and entering and that he had a right to remain silent and also he had a right to counsel and if he did not have the funds for counsel, the state would provide one." He was "further advised that anything he said could be against him."

Officer James Collins corroborated that testimony and said the defendant had apparently injured his ankle when he jumped off the roof. Collins was sent to Broadlawns Hospital to guard him while he was being examined by doctors and, while there, had a brief conversation with defendant. It is the admission of this conversational exchange into evidence, over defendant's objection, that provoked this appeal.

In his proposition relied upon for reversal defendant contends, "the trial court committed reversible error in permitting the introduction of admissions made by the defendant into evidence without an affirmative showing that the defendant waived his right to counsel at the time the admissions were made."

I. It is well settled that when a person is taken into custody or otherwise deprived of his freedom of action in any significant way, before interrogation he must be advised (1) that he has a right to remain silent, (2) that anything he might say may be used in evidence against him, (3) that he has a right to the presence of an attorney, and (4) that if he cannot afford counsel he may have counsel appointed. Miranda v. State of Arizona, 384 U.S. 436, 444, 471, 86 S.Ct. 1602, 16 L.Ed.2d 694; State v. Hardesty, Iowa, 153 N.W.2d 464. Defendant does not contend the warnings listed above were not given to him after his

arrest, but argues that the statement made by him was not admissible because the State failed to show at the time of the statement he was again advised of his rights or that he effectively waived his right to counsel.

Thus, we are faced with three very interesting questions: (1) Must a person be advised of his constitutional rights more than once? (2) Was defendant's objection to the admission of his statement at the time of trial properly overruled? (3) Did this verbal exchange between the officer and the defendant amount to actual custodial interrogation?

■ II. An accused need not be advised of his constitutional rights more than once unless the time of warning and the time of subsequent interrogation are too remote in time from one another. People v. Perrin, 247 Cal.App.2d 838, 55 Cal.Rptr. 847, 850 (1967); People v. Hill (Ill.), 233 N.E.2d 546 (1968). In the Perrin case defendant was advised of his constitutional rights prior to a morning interrogation by police, but when interrogation was again resumed in the afternon no admonition of his rights was repeated. The court held there was no evidence that the defendant had wished the interrogation to cease or had indicated so in any manner, and thus the warning in the morning was held to carry over into the afternoon. In the Hill case the defendant was arrested and brought to the precinct station and advised of his constitutional rights. He was then interrogated by some officers over a period of several hours. The court held it was not necessary to repeat the warnings at the beginning of each successive interview, particularly where the defendant was interrogated for a relatively short period of time, about three hours in all.

■ The statement in question was made while defendant was in custody at a hospital, about one and a half hours after the time of his arrest. We think this warning was sufficient.

III. Defendant's next contention concerns the overruling of his objection to the testimony of Officer Collins and his motion to strike the officer's testimony relative to the conversation he had with the defendant at the hospital.

From the transcript furnished, it appears Officer Collins testified he observed two cans of beer and one tire iron on a table in the bakery at the time defendant and another were apprehended. He was then asked, "Now, based upon this observation, could you relate to the jury the conversation you had with the defendant at Broadlawns Hospital?" Before answer, defense counsel said, "The defendant objects, Your Honor. There has been no direct testimony with this particular witness that advised him of his rights or if anyone advised him of his rights or what rights he was advised of and this testimony should be stricken." The objection was overruled and defendant excepted. Counsel then said, "Tell us what the conversation was," and when no further objections or motions were made by defendant, the officer said, "Yes, I made reference to the beer that I had seen in Jay's Bakery. I asked him, I said, 'You guys must have been planning on staying for awhile.' I said, 'You had your cold beer with you.' And he said, 'Yes, but we did not have a chance to drink it.' This is about all."

No motion to strike was made at the time. However, at the conclusion of the cross-examination of Officer Collins, defendant's counsel renewed his "objections to the questions propounded by counsel and I would like to request the objection because such questioning was done when the accused was in great pain and which would constitute a form of duress by the questioning of the officer," and asked on those two grounds that the testimony be stricken. This motion was overruled, and we find no other motions relative to this statement in the record, no objection to the court's instructions, and no motion for a new trial.

■ Under this record the trial court could properly deny both the objection and

the motion to strike. The reasons advanced by counsel in support of his specific objection and motion were not sufficient. It is elementary that an objection to offered evidence must be sufficiently specific to advise the trial court why it is inadmissible. Frederick v. Shorman, 259 Iowa 1050, 147 N.W.2d 478, 485, and citations; State v. Estrella, 257 Iowa 462, 468, 133 N.W.2d 97. When specific objections are made and do not include the reasons argued in appeal, as a general rule the latter will not be considered on appeal. State v. Mabbitt, 257 Iowa 1063, 1066, 135 N.W.2d 525; Masters v. Eide, 8 Cir., 353 F.2d 517, and citations; Chester v. People of State of California, 9 Cir., 355 F.2d 778, and citations.

The record shows defendant had been properly and timely advised of his rights as announced in Miranda at the time he was taken into custody, and there was no objection at the time of defendant's statement on the basis of duress. In fact, this belated idea seems to have come to counsel during the cross-examination when Officer Collins admitted defendant's foot was swollen and he was advised of the pain by defendant.

We are not convinced the trial court erred in overruling defendant's objection to this testimony. Clearly, it was not premised on a claimed failure of the State to show he heard and understood the warnings given. Defendant's argument that this reason was included in his objection and motion to strike has no merit.

■ It is the State's position that, even if the objection be considered adequate to raise this latter issue, by failing to file a motion to suppress, defendant waived his right to object to the officer's statement at the trial. It refers to the well established rule that, unless a defendant who is forewarned as to the substance of testimony to be offered makes a proper and timely motion to suppress such evidence before trial, any objection to its introduction will be deemed waived. State v. Dwinells, 259 Iowa 945, 146 N.W.2d 231, 234; People v. Ferguson, 376 Mich. 90, 135 N.W.2d 357;

Dunek v. District Court of Lee County, 258 Iowa 673, 140 N.W.2d 372.

It appears here that the objected-to testimony of Officer Collins was almost identical to that appearing in the minutes of testimony attached to defendant's grand jury indictment. Defendant was, or should have been, well aware in advance of trial of this testimony, made no motion to suppress it, and failed to make a proper objection to its admission when offered. We recognized this ground of waiver as valid in the recent case of State v. Anderson, 260 Iowa 122, 148 N.W.2d 414, but there we did not ground the decision alone on that somewhat-technical basis, nor need we do so here.

IV. The State argues that Officer Collins' testimony as to his statement and defendant's reply did not violate the Miranda holdings or any other of the United States Supreme Court decisions regarding procedural safeguards against self-incrimination. It points out that the prohibition most often quoted from Miranda v. State of Arizona, supra, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, states that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *By custodial interrogation, we mean questioning* initiated by law enforcement officers *after* a person has been taken into custody or otherwise deprived of his freedom of action *in any significant way.*" (Emphasis added.) The emphasized words, it says, indicate that the Supreme Court did not intend to include all statements made by one temporarily detained or made in a conversational nature with an officer when not being interrogated in a purposeful manner, and we are inclined to agree.

Courts of various jurisdictions have pointed out that Miranda was concerned with police questioning and interrogation of suspects held in isolated police custody, particularly the incommunicado interroga-

tion of individuals in a police-dominated atmosphere.

In Gaudio v. State, 1 Md.App. 455, 230 A.2d 700, the defendant was arrested for a traffic violation. The arresting officer then observed that the springs of his vehicle were not down although the cargo appeared to be heavy lumber. He then discovered the false back end and concluded in his own mind that "there was a false load on the truck." Taking a fair guess at the contents, he asked defendant if he had cigarettes on the truck and received an affirmative answer. To the question as to the quantity, the defendant told him there were 2,000 cartons. Thereafter, defendant consented to a search and, when the cigarettes were found, he was arrested for felonious transportation of untaxed cigarettes. There the above testimony was admitted without objection at the trial, and the Miranda question was raised on the appeal. In holding that decision did not apply to the situation, the Maryland Court of Special Appeals said, although it appears that the procedural safeguards must be employed when (a) an individual is taken into custody or otherwise deprived of his freedom by the authorities, and (b) he is subject to questioning, "In the instant case, we feel that the appellants were not subjected to questioning within the contemplation of Miranda. We do not think that the evils with which the Court was concerned in Miranda were present." It then pointed out that the defendant was not held incommunicado in an isolated setting in the privacy of an interrogation room in a police station, and that he was not surrounded by antagonist forces and subjected to the techniques of persuasion. He was in the presence of one police officer, standing on a public street, and he knew if he posted bond for the traffic charge he could proceed on his way. The court then said: "We see no practice here, such as concerned the Court in Miranda, requiring assurance that it be eradicated. The compelling atmosphere inherent in the process of in-custody interrogation was not present. We think

that the questions by the trooper as to the cigarettes and the answers by Gaudio did not amount to a 'custodial interrogation' as contemplated by Miranda." The court went on to say it could not agree that "under any and all circumstances" Miranda protects the accused, at least to the extent that no inquiry at all by the authorites is permissible without a demonstration by the State that prior warnings were given. We agree. Like the Maryland court, we too recognize the rationale of Miranda and share deep concern for justice and desire to render every man, whether innocent or guilty, what is due him. A balance must be maintained which does justice, not only to the accused, but also to society. We subscribe to no interpretation of a rule which tends to thwart rather than secure justice.

In a similar decision the Washington court in State v. Persinger (Wash.), 433 P.2d 867, permitted an officer to testify to a reply he received from a convict accused of attempted escape. To the question as to why he had not followed Moses down the rope, defendant replied that he "was discouraged by the ululation of the dogs and the weaponry of the tower guards." On appeal, defendant contended that the statement was inadmissible because the guard had not prefaced his roof-top inquiry with a Miranda warning. In rejecting that contention the Washington court held the statement was not such as that contemplated by Miranda. It said: "The casual, lone, and conversational inquiry by the captain of the guards simply did not amount to the type of 'in-custody interrogation' contemplated by the decision in Miranda * * * and/or Escobedo * * *. And, appellant's gratuitous, expletive, and candid reply to the query cannot be characterized as one induced by any form of proscribed intimidation. At best the question and the answer were the products of *normal, human, and spontaneous curiosity* on the one hand and chagrin on the other. The trial court did not err in admitting the brief conversation into evidence." (Emphasis added.) Also

see Perry v. United States (D.C.App.), 230 A.2d 721.

Here too we find the defendant in the hospital for a foot examination, in the presence of doctors and nurses, not officers in a police-dominated atmosphere. Defendant was not even asked a question, but the officer sent to guard him merely observed in a conversational way that they "must have been planning on staying for awhile. * * * You had your cold beer with you." The defendant responded to the jest and said: "Yes, but we did not have a chance to drink it." We also conclude this was not the circumstance nor type of interrogation contemplated by Miranda, and the statement made by defendant was not inadmissible because the State failed to demonstrate the use of procedural safeguards effective to secure the privilege against self-incrimination.

V. In any event, this admission of defendant's statement, even if error, was without prejudice to him. In view of the fact that he was caught on the premises, the acceptance of evidence as to his admission that he was there would seem to amount to harmless error, and the judgment of the trial court must be affirmed.

Affirmed.

All Justices concur, except BECKER, MASON and RAWLINGS, JJ., who dissent.

BECKER, Justice.

I dissent.

I. From my reading of the printed record it appears the evidence to prove defendant received and understood the Miranda warnings at any time is wholly inadequate. The testimony of officers Burns, Collins and Warrick that the warnings were given fails to indicate defendant heard the warnings, much less understood them. The only fair reading of the record indicates defendant had just jumped from the roof top when the warnings were purportedly given. Davis was injured at the time. Several hours later at the hospital the objectionable statement was elicited.

II. In reaching its conclusions the majority considers two other matters impelling comment.

Despite repeated urgings by the attorney general's office in other cases we have, to this point, resisted the temptation to decide defendant's constitutional rights on the basis of failure to file motion to suppress. If this rule is adopted it should be adopted in a manner which will assure:

1. A hearing in every case where confessions or admissions are to be used.

2. Full notice to defendant as to the details of the evidence to be used so admissibility can be properly evaluated prior to trial.

3. Adequate procedural safeguards to assure relative invulnerability to eventual direct or collateral attack.

State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N.W.2d 3, 13 provides a rule for Minnesota courts supplying the above requirements. The bulk of that rule is worth repeating here. "(1) At the time of arraignment when a defendant pleads not guilty, or as soon as possible thereafter, the state will advise the court as to whether its· case against the defendant will include evidence obtained as the result of a search and seizure; evidence discovered because of a confession or statements in the nature of a confession obtained from the defendant; or confessions or statements in the nature of confessions.

"(2) Upon being so informed, the court will formally advise the attorney for the defendant (or the defendant himself if he refuses legal counsel) that he may, if he chooses, move the court to suppress the evidence so secured or the confession so obtained if his contention is that such evidence was secured or confession obtained

in violation of defendant's constitutional rights.

"(3) If the defendant elects to contest the admissibility of the evidence upon Federal constitutional grounds, a pretrial fact hearing on the admissibility of the evidence will be held in open court with the defendant present and represented or advised by counsel. Upon the record of the evidence elicited at the time of such hearing, a determination by the trial court as to whether the receipt of the evidence contested will vitiate defendant's constitutional rights will be made. It will be the obligation of the state to proceed first at such a hearing identifying the evidence which will be offered against the defendant and showing that the circumstances under which it was obtained were consistent with constitutional requirements. The defendant in presenting his case in opposition to the claims of admissibility may testify without waiver of his constitutional privilege against self-incrimination. The factors to be considered in determining whether a confession is valid are as outlined in State v. Taylor, 270 Minn. 333, 133 N.W.2d 828.

"(4) If the defendant, having been advised before trial that evidence obtained as the result of search and seizure will be offered against him or having been informed that a confession or statements in the nature of a confession will be offered in evidence at trial, and having been told that he may have a test of the admissibility of this evidence upon constitutional grounds before the trial, fails or refuses to request such a hearing, any objection which he may otherwise make based upon this ground may be deemed waived.

"(5) If the state, having been requested to disclose whether evidence obtained as a result of a search and seizure will be offered against defendant at the time of the trial and having been requested to state whether a confession or admission in the nature of a confession will be a part of its case, fails or refuses to make such disclosure it may be inferred that any such evidence offered at the time of trial was obtained in violation of the defendant's constitutional rights.

"The procedure which we have outlined deals only with evidence obtained as the result of a search and seizure and evidence consisting of or produced by confessions on the part of the defendant. However, the steps which have been suggested as a method of dealing with evidence of this type will indicate to counsel and to the trial courts that the pretrial consideration of other evidentiary problems, the resolution of which is needed to assure the integrity of the trial when conducted, will be most useful and that this court encourages the use of such procedures wherever practical."

Failure to provide such safeguards will inevitably invite disposition of these matters on constitutionally indefensible grounds.

III. If we are to recognize the California doctrine of "harmless error", Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, we should do so only after due deliberation. However, we should recognize the United States Supreme Court's admonitions in this regard and analyze the evidence with those admonitions in mind. This part of the opinion also appears to be *obiter dicta* since the majority does not place the decision on that ground but adds recognition of this doctrine in one short paragraph at the end of the opinion.

I would reverse and remand for retrial.

MASON and RAWLINGS, JJ., join in this dissent.