**STATE of Iowa, Appellee,**

**v.**

**Otis Eugene McPHERSON, Appellant.**

**No. 53049.**

Supreme Court of Iowa.

Nov. 12, 1969.

Ralph J. Bellizzi and Richard A. Strickler, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Larry Seckington, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

BECKER, Justice.

Defendant was charged by County Attorney's information with the crime of robbery with aggravation, tried by a jury and convicted. On this appeal he assigns several errors. We affirm.

I. Defendant alleges the court erred in failing to sustain defendant's motion for a directed verdict. In reviewing this assignment we consider the evidence in the light most favorable to the State. State v. Kaster, Iowa, 160 N.W.2d 856. If there is substantial evidence reasonably tending to support the State's charge, the case should be submitted to the jury for determination. State v. McClelland, Iowa, 164 N.W.2d 189. The State tried the case on the theory defendant was guilty as an aider and abettor. Section 688.1, Iowa Code, 1966.

The evidence reflects the following facts. Between 10:15 and 10:45 P.M., December 13, 1967, the E and H Grocery Store in Des Moines was robbed by two young men. The store was staffed at the time by Clarence Sample, a clerk, and Don Bitting, a 14-year-old helper. The robbers held the two at gunpoint while they unsuccessfully

tried to open the cash register. Failing that they took a sack containing about $50 in change from under the register, left by the front door and fired a shot back into the store as they left.

Sample followed and saw them enter a red and white Chevrolet automobile which was driven by a third man. Sample estimated he got within six feet of the car which was moving as the men got into it. The area was well lighted. He could see the driver was wearing a print shirt similar to the shirt worn by defendant when arrested a few hours later. Sample could not identify defendant as the driver. There was a cloth draped over the license plates of the car.

Donald Bitting told substantially the same story but did not identify the shirt. Both men identified James Simpson and James Peterson, co-defendants on the information, as the men who entered the store.

Sample immediately called the police who arrived within five minutes. A description of the car was broadcast on the police radio.

At about 1:30 A.M. the same night, Richard Eikleberry, a service station attendant, replaced a headlight in a red and white Chevrolet driven by defendant. Simpson and Peterson were with defendant. He paid the $2.68 bill with change and demanded 90 cents each from his companions. Each man paid defendant in change. The attendant estimated that each of the three men had about five or six dollars in his hands when this transaction took place. The men asked the station attendant if he wanted to buy some change but he said he had enough.

The police stopped the red and white Chevrolet at about 2:30 A.M. Defendant was driving. Simpson and Peterson were passengers. The men were arrested at that time and defendant was told he did not have to talk to the officers, anything he said could and would be held against him, he had a right to an attorney and if he couldn't afford one the State would provide one for him. Defendant testified the officers told him he was entitled to a lawyer and if he didn't have any money the State would provide a lawyer for him. Defendant contends this was all the warning given to him. He said he asked for a lawyer but didn't get one until the preliminary hearing on December 15, 1967.

The officers proceeded to question defendant. He told them he had been with his companions all night from shortly after 10:00 P.M. until they were arrested. The officers were told of the three men driving around the city, playing pool at a bowling alley and stopping at a filling station to have a headlight replaced.

A search at the time of arrest produced nothing of any significance. The State does not claim defendant had any large amount of cash at the time of arrest and the gun used in the robbery was not offered in evidence.

Defendant took the stand. He testified he was not with the two co-defendants from 10:00 P.M. until about midnight. He admitted telling the police he had been with the other men that night but said he didn't mean to say he had been with the men all night. He said he had seen the men about 9:30 P.M. at a mutual friend's home. Defendant borrowed the car and the three went to play pool at about 9:30 P.M. Defendant says the other two left the pool hall at about 10:00 P.M., but he remained and played pool until 11:30 P.M. The car was parked outside and could be started without a key because the switch was broken.

Defendant says he left the pool hall about 11:30, went out to his father's house but didn't stop; as he was driving south he saw the other two defendants and picked them up at about midnight. The three men were then together until arrested. Defendant told of buying the new headlight. He said he did have about $5.00 worth of change and that he got $3.00 worth of that from his companions for gas.

Except for the crucial two-hour period from 10:00 to 12:00 P.M., defendant's story is not substantially different from that of the State. His story on the witness stand, as to those two hours, is quite different from the story the police say they received from him the night of the robbery. In addition to the statement to the police the circumstantial evidence heretofore detailed tends to support the jury verdict. We need not belabor the point. The trial court was correct when it refused to direct a verdict. State v. Dwinells, 259 Iowa 945, 146 N.W. 2d 231.

■ II. Defendant contends his constitutional right against self-incrimination was violated by admission of the statements made to police at the time of arrest. He says a mere warning given by the interrogators is not alone sufficient to show a voluntary, knowing and intelligent waiver of his right to remain silent, citing Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 and Crooker v. California, 357 U.S. 433, 78 S. Ct. 1287, 2 L.Ed.2d 1448.

This court has held contra to defendant's contention. State v. McClelland, Iowa, 164 N.W.2d 189, 195 quotes Mullaney v. State, 5 Md.App. 248, 246 A.2d 291, 301, with approval: "'* * * Despite the fact that the testimony does not show an express waiver of appellant's right to remain silent and to counsel, we hold that the totality of the circumstances—the attendant facts of the case—are such as implicitly show that appellant voluntarily and intelligently relinquished these rights when he made his incriminating admissions.'" This holding is consistent with the holding in State v. Davis, Iowa, 157 N.W.2d 907. There defendant also claimed the State failed in its burden to prove the Miranda warnings were not only given but were heard and understood by defendant and the privilege was voluntarily and intelligently waived.

In State v. Davis, supra, we held the proof of compliance with the federal Miranda mandates was sufficient to justify the trial court's ruling.[1]

■ III. Defendant requested an instruction which would have submitted the question of voluntariness of the admissions to the jury. This procedure would have been consistent with what is known as the Massachusetts rule for determination of voluntariness of admissions or confessions; i. e., if the judge determines the admission was voluntary he again submits the question to the jury. In State v. Holland, 258 Iowa 206, 138 N.W.2d 86, we adopted the orthodox rule; i. e., where the judge passes on the voluntariness of the statements the determination is final. Both methods are approved by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R. 3d 1205. The court did not err in rejecting the requested instruction.

IV. Defendant also objects to the giving of instructions 3, 5, 7 and 8. We have considered all the instructions as a whole and find no reversible error under the assignments presented to us. We decline to extend this opinion by a detailed analysis of the various objections.

■ V. Defendant assigns misconduct in final argument by the assistant county attorney. Two arguments were used to which defendant objects.

First, the county attorney, in discussing the evidence, invited the jury to put themselves in the position of the witnesses at the time of the events about which they were testifying. Our condemnation of the "golden rule" argument in discussing damages, Russell v. Chicago, Rock Island & Pacific R. R. Co., 249 Iowa 664, 86 N.W. 2d 843, 70 A.L.R.2d 927, is not authority for contending the argument here constitutes reversible error. The reasons for the prohibition in discussing damages are not

1. The writer of this opinion dissented in both State v. McClelland, supra, and State v. Davis, supra, and adheres to the opinions there expressed. The standard laid down in those cases is controlling here.

present here. We are cited no cases holding such argument to be reversible error in a criminal case. We note defense counsel's argument: "I could go into a lot of instances where this could occur in your life and my life. * * *." Counsel on both sides are permitted reasonable latitude in final argument. We cannot say this latitude was abused here.

■ VI. Defendant's second complaint based on final argument is in the realm of invited error. In final argument defense counsel closed his argument as follows: "Now, Mr. McKeon would tell you he doesn't suspect it, he knows it, but that's not his right. That's your right to determine if this man is guilty and if he knew it happened, if he had knowledge of it. As I stated, in that one instruction I want you to—I keep harping on it, but it is very important. As I said, Mr. McKeon will no doubt talk about it and perhaps should, but we can't forget he can't generate his knowledge of any crime or what happened by the fact that he suspects it, and the Court will so instruct you. Thank you very much."

The prosecutor, in the course of his argument, said: "Like Mr. Strickler says, and I wasn't going to comment on this, but I know. I know. What I know you can't take back there with you, but if I didn't know I wouldn't be trying this case. I wouldn't be trying this man as a criminal if I didn't know." This statement would be at least censorable, if not reversible error, if defense counsel's final argument had not invited the statement.

■■ Defense counsel had no right to anticipate an improper argument by the prosecutor. When he did, counsel had a right to answer. We have recently disapproved such argument by a prosecutor. State v. Allison, 260 Iowa 176, 147 N.W.2d 910, 914. But this does not mean defense counsel can invite such comment and then predicate error on acceptance of the invitation. State v. Sage, Iowa, 162 N.W.2d

502, 503; State v. Kendall, 200 Iowa 483, 487, 203 N.W. 806.

VII. The court acted properly in overruling motions in arrest of judgment and for a judgment notwithstanding the verdict and for a new trial. The reasons for such actions have all been discussed in the foregoing divisions and need not be repeated. Affirmed.

All Justices concur, except RAWLINGS and MASON, JJ., who dissent.

RAWLINGS, Justice (dissenting).

Being unable to agree with the reasoning or conclusions reached in Division II of the majority opinion, I respectfully dissent.

In my humble opinion no showing is here made by the State disclosing defendant *Knowingly waived* those constitutional rights enunciated in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, 10 A.L.R.3d 974.

At the outset I adhere to the views set forth in the dissents in State v. McClelland, Iowa, 164 N.W.2d 189, 198, and State v. Davis, Iowa, 157 N.W.2d 907, 912.

Furthermore, the court stated in Miranda, supra, loc. cit., 384 U.S. 475–476, 86 S.Ct. 1628–1629: "* * * a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. State of Illinois, 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977. This Court has always set high standards of proof for the waiver of constitutional rights, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, [146 A.L.R. 357] (1938), and we reassert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado in-

terrogation, the burden is rightly on its shoulders.

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. *But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained.* A statement we made in Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), is applicable here:

" 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' (Emphasis supplied)

"See also Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Moreover, where in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated.

"Whatever the testimony of the authorities as to waiver of rights by an accused, the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights. In these circumstances the fact that the individual eventually made a statement is consistent with the conclusion that the compelling influence of the interrogation finally forced him to do so. It is inconsistent with any notion of a voluntary relinquishment of the privilege. Moreover, any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege. The requirement of warnings and waiver of rights is a fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation.

"The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant. No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination."

Then id., at 384 U.S. 478–479, 86 S.Ct. 1630, is found this pertinent statement: " * * * we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. *After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.*" (Emphasis supplied)

It is to me evident the majority, in the case at bar, impermissibly concludes from a silent record there was a knowing and intelligent waiver by defendant of his rights under Miranda.

In support of this view see also Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274; Burgett v. State of Texas, 389 U.S. 109, 114–115, 88 S.Ct. 258, 261–262, 19 L.Ed.2d 319; Carnley v. Cochran, 369 U.S. 506, 514–517, 82 S.Ct. 884, 889–890, 8 L.Ed.2d 70; and Johnson v. Zerbst, 304 U.S. 458, 464–465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357.

I would accordingly reverse and remand for a new trial.

MASON, J., joins in this dissent.