LILLIE, J.
Defendant, Jones and Armstrong were charged with kidnaping for purposes of robbery (§ 209, Pen. Code) and robbery (§ 211, Pen. Code). Defendant was charged with a prior felony conviction (manslaughter) which he admitted. The kidnaping charge was stricken on motion of the People. A jury found defendant and Jones guilty of robbery, second degree; it acquitted Armstrong. Defendant appeals from the judgment.
After his discharge from the hospital on April 19, 1965, George Fulcher started drinking wine; toward evening he went to a recreation center next to a pool hall on 41st Street. Around 9 p.m. he wanted to leave but had no transportation; someone suggested that a man in a car parked in front of the pool hall would take him. Fulcher went up to Armstrong, the driver, and offered him a couple of dollars for a ride to a certain address. J ones and a woman were in the car but when Fulcher entered the woman left. Fulcher sat in the back seat with defendant. After four or five blocks one of them asked *549 Fulcher if he would participate in buying some liquor, then Armstrong drove the ear up a dark alley and stopped. The next thing Fulcher knew he was being attacked by the three men. One of them hit him in the back saying, ‘ ‘ Give me all the money you have”; Fulcher denied having any money and the assault continued, one man holding him while the others hit him. They ripped his pockets and twisted his legs; after taking his money one said, “This man is not as drunk as we think.” Two left and ordered defendant to stay until they returned; defendant then continued to beat Fulcher and made threatening remarks and tore the hearing aid off of Fulcher’s shirt. Fulcher gave defendant a little money he had in his watch pocket but defendant continued to beat him. Finally Fulcher put up some resistance and defendant fled. In the melee Fulcher lost his glasses, wallet, coat, shoes and everything except his socks, shirt and pants; he got out of the car and in his stocking feet ran to the end of the alley where he saw a police car. Fulcher’s face was bleeding; he had been hit around the head, about the eyes, nose and mouth.
Around 11:45 p.m., Officer Clark saw Fulcher calling for help at the end of the alley; his clothes were disheveled and torn, his face was swollen around the left eye and he was bleeding from the top of his head and nose. He put Fulcher in the police vehicle and within three or four minutes Fulcher saw the car in which he had been assaulted heading east on 45th Street; Fulcher pointed it out and the officer stopped it. Armstrong was driving; defendant and Jones were with him. In the back of the car on the seat was Fulcher’s coat, and on the floor, his shoes. There was wet blood all over the right backrest, on the window and the window moldings, the area beneath the window and on Fulcher’s coat. A piece of glass on the rear seat was identified by Fulcher as having been broken out of a pair of dark glasses isesued to him by the county. In the pocket of Jones’ coat were Fulcher’s glass ease and hearing aid. Jones had a cut on his forehead and appeared to have been drinking.
Witnesses in Armstrong’s defense testified that Richard White, Mrs. Bradley, defendant. Armstrong and Jones went over to 41st Street to pick up Mrs. Bradley’s television set. They told a story of how Fulcher was beaten up by three men on 41st Street and left bleeding on the sidewalk, they picked him up and agreed to take him where he wanted to go for $2, they drove to a liquor store, then to an alley behind Mrs. Bradley’s apartment and four went upstairs with the televi *550 sion leaving Fulcher and Jones, who appeared to be drunk, in the back seat of the car.
Jones testified that he and defendant went to Mrs. Bradley’s apartment; he had been drinking during the day and he asked Armstrong to take him home; he got into the car with White and Armstrong, drove past a liquor store, parked, and began drinking a gallon of port wine in the car; the next thing he remembered was waking up in jail. Jones did not remember picking up Fulcher, the transaction with the television set or being left with Fulcher in the car.
Defendant testified that they picked up Fulcher about the same time they picked up the television, drove to a liquor store, then back to Mrs. Bradley’s apartment where Armstrong, White and he went upstairs leaving Jones and Fulcher in the car; Jones seemed sober at the time; later he returned to the ear -and found that Jones and Fulcher had been in a struggle; he left, returned to the apartment and in about five minutes Jones came up; Jones was still sober but was bleeding from a scratch on the forehead; Jones said that Fulcher had left the car and he was ready to go home.
Presenting an extensive argument on the facts to show “reasonable doubt,” appellant claims that the evidence is insufficient to support the verdict because it consists of “circumstantial evidence”; the identification of him (appellant) “might have been distorted” because on the day of the assault Fulcher had been released from a mental institution and was under the influence of drugs and alcohol; Fulcher’s testimony was vague because he could not remember who or how many men were in the car with him; and all of the defense witnesses placed Jones not. him (appellant) in the back of the car with Fulcher.
“It is the trier of fact, not the appellate court, that must be convinced of a defendant’s guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact’s findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.” (People v. Robillard, 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086] ; People v. Daugherty, 40 Cal.2d 876, 884 [256 P.2d 91].) As stated in Daugherty at page 885: ‘ ‘ The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt. ...” This court will not attempt to determine the weight of *551 the evidence but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the trier of fact to warrant the inference of guilt. (People v. Newland, 15 Cal.2d 678, 681 [104 P.2d 778].)
Appellant’s argument goes primarily to the weight of the evidence and the inferences to be drawn therefrom, and to the credibility of the witnesses. He claims that Fulcher could not remember who was in the ear, where the ear was driven, who went into the liquor store, who left the car when it was parked and who went up to the apartment; and that Fulcher had been released from a mental institution the same day and was under drug sedation and the influence of alcohol. While Fulcher was none too articulate and admitted that on the day of the assault he was feeling “sort of mellow,” his testimony reflects a coherent story of how he entered the ear driven by Armstrong and was beaten by three men who took his money, two of whom fled leaving behind defendant who continued to assault him. Fulcher positively identified defendant in the courtroom as the man in the back seat of the car who beat him after the others left. While the prosecution may rely on circumstantial evidence to connect a defendant with the commission of the crime charged and to establish beyond a reasonable doubt that he was the perpetrator thereof (People v. Hillery, 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382]), it is apparent that here the conviction rested upon direct evidence—the eyewitness account of the victim. The testimony of Fulcher alone is sufficient to sustain the verdict (People v. Reese, 220 Cal.App.2d 143, 145 [33 Cal.Rptr. 561]); the identification of defendant by the victim of a robbery need not be corroborated by other evidence. (People v. Thompson, 147 Cal.App.2d 543, 546-547 [305 P.2d 274].) The question of identity was one for determination by the jury and cannot be effectively urged on appeal. (People v. Williams, 53 Cal.2d 299, 303 [347 P.2d 665].) The jury, as it had a right to do, accepted Fulcher’s testimony and identification of defendant as one of the three men who beat and robbed him as true, and rejected the testimony of the defense witnesses that three other men assaulted Fulcher and that it was Jones who was left in the back of the car with him.
As to the crime itself, there was abundant corroboration of Fulcher’s story—his physical condition, the condition of his clothing, Fulcher’s presence in the alley “hollering” for help, only a few minutes later, his identification of the car in *552 which the three men were riding, his identification of the three men as those who assaulted and robbed him, his clothing and articles found on the back seat and floor of the car, the wet blood on his coat and on the inside rear of the vehicle and Fulcher's identification of Jones, an occupant with defendant in the car, as one of his assailants upon whose forehead was a fresh cut and in whose coat Fulcher’s glass case and hearing aid were found. As to the defense witnesses, upon whom appellant herein places such reliance, their accounts of what occurred were at variance. In the light of the discrepancies in the three stories, Fulcher’s positive identification of defendant as one of the men who beat and robbed him and who later assaulted and robbed him in the back seat, and the other circumstances, the inference of guilt drawn by the jury is the only reasonable one that could be predicated upon the proven facts.
Appellant, who was tried with Jones and Armstrong, now claims under People v. Aranda, 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], that Fulcher’s hearing aid found on Jones’ person was inadmissible against him and that had he had a separate trial there would not have been sufficient evidence to convict him because “there would be no exhibits of robbed goods presented against him.” He is in error on both counts—in his reliance upon People v. Aranda, 63 Cal.2d 518, [47 Cal.Rptr. 353, 407 P.2d 265], and in his argument that the evidence could not be used against him. For all we know no extrajudicial statements were made by any of the defendants; certainly none was offered or received in evidence. Aranda deals with the admissibility of a eodefendant’s extrajudicial statements; there is nothing in Aranda or in any subsequent case which makes the rules set up therein applicable to physical evidence. Nor is there any question concerning the propriety of the joint trial. “When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials.” (§ 1098, Pen. Code.) No motion for severance was made in the trial court; nor was there any reason for the court to order separate trials. In the absence of a motion for severance, the joint trial was proper. (People v. Alarcon, 200 Cal.App.2d 860, 861 [19 Cal.Rptr. 667] ; People v. Richardson, 182 Cal.App.2d 620, 623 [6 Cal.Rptr. 61].) But even had defendant been tried alone, in the light of the joint commission of the offense, the victim’s hearing aid found only a few minutes after the *553 robbery on one of the perpetrators riding with defendant in the ear identified by the victim as the one in which he was robbed, would have been admissible against him. Indeed, it was material and relevant and directly related to the commission of the crime.
The judgment is affirmed.
Wood, P. J., and Pourt, J., concurred.
A petition for a rehearing was denied November 21, 1968.