[Crim. No. 14111.   Second Dist., Div. Five.   Jan. 23, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES RAY GALLARDO et al., Defendants and Appellants.

Joseph Amato, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lawrence R. Tapper, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—Defendants Gallardo and Ruiz were jointly tried before a jury. Gallardo had been charged with three

counts of robbery, Ruiz with six. Two prior felonies were alleged against Gallardo, five against Ruiz. The jury found both defendants guilty on all counts and found all priors to be true. At the time of sentencing counts I and II were dismissed as to Gallardo only.

The robberies in question took place on October 24, 28 and 29, 1966, and on November 2, 9 and 11, of the same year. A detailed recital of the evidence is unnecessary in view of the disposition of this appeal. There can be no question that the evidence supports all verdicts. This much, however, should be noted: as far as the robberies charged in counts I and II are concerned, Gallardo's guilt can rest solely on a finding that he aided and abetted Ruiz as a lookout and driver. As far as count III is concerned, it was again Ruiz who forcibly took money from the victim. This time, however, Gallardo too was observed with a gun. Ruiz alone was accused of the robberies charged in counts IV, V and VI, although it appears that Gallardo may have aided and abetted two of them.

The prior felonies charged against Gallardo were aggravated assault (1954) and possession of narcotics (1962). The felonies charged against Ruiz were theft (1945), selling narcotics (1949), grand theft (1952), felony drunk driving (1957) and burglary (1962).

On appeal it is contended that the trial court abused its discretion in not ordering separate counsel for defendants and in failing to order separate trials. We reluctantly agree on the first point and therefore do not reach the second.

While it is perfectly clear that the People proved their case to the hilt against both defendants, the bare bone summary of the facts makes it obvious that this is not a case where both defendants were equally involved. Ruiz was charged with six felonies, Gallardo only with three. As far as two of those three are concerned, his activities were peripheral. Even on the occasion when Gallardo personally wielded a weapon, it was Ruiz who was the active robber. As for the priors, compared to Ruiz, Gallardo was a beginner in crime.

At the outset of our discussion we agree with the Attorney General that under standards which apparently prevailed at the time of the trial neither Gallardo nor Ruiz made a record in the trial court, adequate to preserve their contention on appeal. However, as we shall show, the law has changed. (*People* v. *Chacon*, 69 Cal.2d 765, 773-775 [73 Cal.Rptr. 10, 447 P.2d 106].) The record does show this much: the case was called for trial on February 6, 1967. At the outset, over

objection, the People were permitted to amend the information so as to charge the prior felonies referred to. The deputy public defender who had been appointed to represent both defendants then asked for a continuance giving, among others, the reason that there was "a little further investigation I need to do for Mr. Gallardo." The case was continued to March 3. The selection of a jury started on March 13. As soon as the first prospective juror was seated, defense counsel asked for a conference out of the hearing of the panel. The following colloquy then took place: "[DEPUTY PUBLIC DEFENDER] : . . . Ruiz wants to tell the Court that he thinks there is a conflict of interest. I have discussed this with both, defendants, *they both think there is a conflict of interest,* that [*sic*] they never told me anything that indicates to me there is a conflict. I don't see any conflict of interest. But if the Court would like to have Ruiz state why he thinks there is a conflict, perhaps that. should be done outside of the presence of the jury. THE COURT: Why didn't he say something to you about that before? [DEPUTY PUBLIC DEFENDER] : Well, he has many times and *I have always asked him what the conflict is and I don't get any kind of response indicating any conflict. I'm— I try to be sensitive in matters of conflict. I always look for it where you have more than one defendant.* THE COURT: Well, I will listen to him then. . . ." (Italics added.)

Ruiz then told the court that he did not feel he was being properly represented and that he wanted "an attorney" appointed for himself. Then there followed an argument between Ruiz and the deputy public defender in which the latter, in order to defend himself against Ruiz' charges of incompetency and lack of interest, in effect had. to call his client a liar. Ruiz' request for separate counsel was denied. To the extent that there was also before the court a similar request by Gallardo, it was never expressly ruled on.

At the trial which followed immediately, defendants presented no evidence.

Two matters stand out: first, at no time were either Gallardo or Ruiz advised of the various situations which would entitle them to separate representation. Therefore any failure on their part to verbalize a request for separate counsel correctly and to give adequate reasons for it. cannot be held against them on this appeal. *People* v. *Chacon,* 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d. 106], so holds.[1]

[1]In *Chacon,* there was no request for separate counsel at all. In fact defense counsel, by implication, informed the court that there was no

Second, while the public defender's good faith is not doubted in the least, he was simply wrong when he informed the court that there was no conflict.[2] It is now well settled that the concept of conflict of interest encompasses far more than inconsistent defenses. In *People* v. *Donohoe,* 200 Cal. App.2d 17 [19 Cal.Rptr. 454] it was pointed out that there is a right to separate representation simply because one defendant is more heavily involved than the other. This principle was one of the reasons for the reversal in *People* v. *Douglas,* 61 Cal.2d 430. 436-437 [38 Cal.Rptr. 884, 392 P.2d 964], and was definitively established in *People* v. *Chacon, supra.* While *Chacon* was a capital case and the court points out (69 Cal. 2d 775) that ''[c]onflicts of interest necessarily exist when the jury must fix the penalty for more than one defendant,'' we cannot read the case as applying only to capital trials.

It seems clear to us that an application of the *Chacon-Douglas-Donohoe* standards would have demanded the appointment of separate counsel.

The next question is whether the trial court's error leads to reversal. Again *Chacon* is helpful. Footnote 3 reads in part as follows: ''Several United States Courts of Appeals have adopted much the same position that we take here. In *Lollar* v. *United States, supra,* 376 F.2d 243, 247, the court stated: '[O]nly where '' 'we can find no basis in the record for an informed speculation' that appellant's rights were prejudicially affected,'' can the conviction stand. . . . In effect, we adopt the standard of ''reasonable doubt,'' a standard the Supreme Court recently said must govern whenever the prosecution contends the denial of a constitutional right is merely harmless error.' '' (*People* v *Chacon,* 69 Cal.2d 765, 776 [73 Cal.Rptr. 10, 447 P.2d 106].)

The facts of *Lollar* v. *United States,* to which our Supreme Court refers, indicate that a minimal showing of a right to separate representation leads to reversal unless the People successfully shoulder the burden imposed on them by *Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824], and convince us that the error was harmless

---

conflict of interest between the three defendants who were eventually convicted. (*People* v. *Chacon, supra,* fn. 2.)

[2]Of course we do not know precisely what information he had at the beginning of the trial. The transcript of the preliminary hearing is not before us. It is obvious, however, that it could not have revealed a very different picture than the evidence adduced at the trial, except that possibly nothing was presented to connect Gallardo with the robberies charged in counts V and VI, which would explain why he was not prosecuted on those crimes.

beyond a reasonable doubt. It seems more than fair to place this burden on the People in cases such as the present, because it is usually the very error of not appointing separate counsel which makes it so difficult for the defendants to point to tangible evidence of prejudice.[3]

Lollar was an admitted homosexual who himself had testified that it was particularly annoying to him to be referred to as a man. Nevertheless his conviction was reversed because his co-defendant, while testifying, called him "Miss Lollar." "Miss Lolly," "she" and "Sister." This, said the court, may have startled the jurors. Also, separate counsel might have decided not to permit Lollar to testify. Finally the joint attorney twice confused Lollar with his codefendant.

Obviously this is very, very little on which to base a reversal, but as the court recognized, "informed speculation" is all that we have to work with in these cases. All we can see, it said, is "the tip of the iceberg." (376 F.2d 243, 246.) To require more than that "tip" would be to ignore the teaching of *Chapman*.

■ We must also keep in mind that the law does not require the showing of an actual conflict. A potential one suffices. (*People* v. *Odom,* 236 Cal.App.2d 876, 878 [46 Cal. Rptr. 453].) ■ We must consider the "innumerable intangible factors" which may always lurk in the wings when there is a disparity of involvement between codefendants. (*People* v. *Kerfoot,* 184 Cal.App.2d 622, 637 [7 Cal. Rptr. 674].) As was pointed out in *People* v. *Donohoe,* 200 Cal.App.2d 17, 28 [19 Cal.Rptr. 454]: "Separate counsel for each defendant throughout the proceedings might have employed tactics for the best interest of his defendant, includ-. ing a vigorous assault on the remaining defendant, without having to consider the interest of such other defendant." Where, on the other hand, counsel represents both defendants, he must, as *Chacon* recognizes, "make common cause" for both clients. If he does not he runs the risk of throwing one client to the wolves, to benefit the other, which is what happened in *People* v. *Keesee,* 250 Cal.App.2d 794 [58 Cal.Rptr. 780]. If he chooses the former course, the record is not likely

---

[3]The application of the *Chapman* test, once it is shown that separate counsel should have been appointed, was anticipated in this state by *People* v. *Perry,* 242 Cal.App.2d 724, 729 [51 Cal.Rptr. 740], where the court said: ". . . appellant does not have the burden of showing the manner in which a conflict of interest may have lessened the effectiveness of his counsel . . ." (See also *Glasser* v. *United States,* 315 U.S. 60, 76 [86 L.Ed. 680, 702, 62 S.Ct. 457]; *People* v. *Kerfoot,* 184 Cal.App.2d 622, 637 [7 Cal.Rptr. 674].)

to contain any positive evidence of an actual conflict. It is therefor not surprising that the record here contains no instances where the ''time bomb ticking away,'' of which the court speaks in *People* v. *Odom, supra,* at p. 880, actually exploded in the courtroom. Yet tick it did.

Whether it was because they had no defense, or because what defenses they had were antagonistic or because a defense by one defendant alone would necessarily have reflected on the other, defendants called no witnesses. The entire defense effort was a series of sometimes quite telling cross-examinations of the prosecution's eyewitnesses, plus an argument which is no part of the record here. It is quite obvious from the reading of the record that every time a witness' credibility was weakened with respect to the identification of one defendant, his testimony as to the other seems that much more solid. To what extent this fact hampered counsel's efforts we do not, of course, know. Then there is the problem of the priors: neither defendant admitted them; therefore the People were permitted to prove them by documentary evidence. Obviously this was no help to the defense. At the outset of the trial, during the discussions between the court, Ruiz and the deputy public defender, it appeared that counsel had suggested to Ruiz that it would be wise to admit them. The court indicated that this was good advice. Ruiz did not think so. Probably he was being stubborn and foolish, but how can we tell that it was not his obstinacy which indirectly led to Gallardo's failure to admit his own priors, because it might have been awkward for counsel to have one client admit while the other denied? Unfounded accusations that attorneys have jettisoned one client to benefit the other are all too common. Finally it is difficult to see how counsel was able to make a closing argument without either emphasizing the points in Gallardo's favor and thereby hurting Ruiz—the very situation of *People* v. *Keesee, supra,*—or playing down the differences between the respective involvements of the two defendants—the vice of the joint representation in *Chacon.*

To sum up: because defendants were not advised what situations would entitle them to separate counsel, their failure to make a properly worded request is excused; their relative involvement was such that, prima facie, it called for the appointment of separate counsel; the ''tip of the iceberg'' shows, the ''indicators of prejudice''—another phrase from *Lollar*—are present; and there is no showing by the People that the error was harmless. The judgment must therefore be reversed.

As we have already said, this disposition makes it unnecessary for us to discuss defendants' second point, the failure of the trial court to order separate trials. This much, however, is appropriate: the People correctly point out that there was no request for a severance and that the cases hold that in the absence of such a request the point cannot be raised on appeal. (*People* v. *Perrin,* 247 Cal.App.2d 838, 845 [55 Cal. Rptr. 847]; *People* v. *Stadnick,* 207 Cal.App.2d 767, 774 [25 Cal.Rptr. 30, 99 A.L.R.2d 766]; *People* v. *Van Valkenburg,* 111 Cal.App.2d 337, 343 [244 P.2d 750].) At a retrial, if defendants are so advised, the request for severance will surely be made and the court will then exercise its discretion in accordance with the principles set forth in *People* v. *Massie,* 66 Cal.2d 899, 915-918 [59 Cal.Rptr. 733, 428 P.2d 869]. What is worth pointing to as far as the present appeal is concerned is simply this: in the total consideration of his case. probably neither defendant was benefited by being tried with the other. Gallardo had nothing to gain and conceivably a lot to lose by being associated with Ruiz. Similarly, while it might have been difficult for any attorney to make Ruiz a sympathetic figure in front of a jury as long as he placed his prior convictions in issue, it certainly did not help him to be compared unfavorably with Gallardo. The point is not that the trial court would have had to grant a severance, but that the joint counsel who was unable to perceive a conflict, apparently never even thought of appealing to its discretion. Of course, whether or not to move for a severance is a matter of professional judgment and it would have to be an extreme case where an appellate court could say that failure to make such a motion amounts to ineffective representation. We do not say so in this case, but we do hold that each defendant was entitled to have that judgment made by an attorney who was not hobbled by conflicting dual representation.

As we said at the outset, we reverse with reluctance. On the face of the record both defendants are clearly guilty. The trouble simply is that the record was not compiled in adherence to the procedural requirements demanded by the Constitution. ''The history of American freedom is, in no small measure, the history of procedure.'' (*Malinski* v. *New York,* 324 U.S. 401, 414 [89 L.Ed. 1029, 1035, 65 S.Ct. 781] [Frankfurter, J., concurring].)

The judgments are reversed.

Stephens, J., concurred.

DRUCKER, J. pro tem.*—I dissent.

The record discloses that there was no conflict of interest requiring the appointment of separate counsel.

The defendant Gallardo was charged with, and convicted of, three counts of robbery of the first degree, and found to have suffered two prior felony convictions. At the time of sentencing, counts I and II were dismissed and he was sentenced to state prison on count III. Ruiz was charged with, and found guilty of, six counts of robbery of the first degree, and found to have suffered five prior felony convictions. He was sentenced to state prison on each of the six counts, sentences to run concurrently. The defendants offered no testimony in their own behalf.

Gallardo and Ruiz appeal from the judgment upon the grounds that the defendants were denied the right to separate counsel, and that the court erred in not ordering a separate trial for each of them. The record affords no support for the contentions of the defendants.

Defendants now argue that the trial court abused its discretion by not ordering separate counsel for each of them. The defendant Ruiz, at the beginning of the trial claimed there was a ''conflict of interest,'' but the substance of his claim only proved to be statements of his dissatisfaction with his counsel, the deputy public defender. This case, first set for trial on January 24, 1967, was continued three times, on each occasion, on motion of the defendants. On the day of trial, March 13, 1967, just after the first juror was summoned into the jury box, the defendant Ruiz asked permission to address the court. Outside the presence of the jury, defense counsel informed the court that Ruiz wanted to tell the court that he thought there was a ''conflict of interest;'' that, as his counsel, he did not see any conflict of interest, and was unable to obtain any information from either of them to indicate such conflict; that Ruiz, on a number of occasions, had suggested a conflict, and that when counsel asked Ruiz what the conflict was, he did not get any kind of response indicating any conflict.

The defendant Ruiz was permitted to address the court as to the reasons why he thought there was a conflict of interest. First, he requested that his counsel be dismissed and that an

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

attorney be appointed to represent him. He next stated that his counsel believed in his guilt and did not believe in his innocence, and that he had not been up to see him or discussed this case with him at all; that he came to the conclusion his counsel was not very interested in his case; that counsel had failed to answer several questions pertaining to the law; that he wanted some legal advice so "I can have some defense." Defendant Ruiz admitted upon inquiry of the court that his counsel advised him to admit the priors but he did not know whether that was good advice. His position is summed up by the following statement: "Well, I would like someone I can talk the case over with and the legal aspects of the case so I can know more about them and give him some help also in defending myself."

Defense counsel denied the statements attributed to him by Ruiz, and advised the court that he had seen the defendant in the county jail at least four times and discussed his case at length with him; that to his recollection he had answered all of Ruiz' questions, and that if he had any additional questions, he would be happy to answer them for him. The request for appointment of new counsel was denied. Defendant Gallardo did not request to be heard and made no application to the court for change of counsel. There was no specific request made to the trial court for separate counsel by either of the appellants.

No showing has been made by the appllants that there was conflict of interest between them. A review of the record discloses no conflict of interest or potential conflict of interest between the appellants, and no disadvantage to either defendant from their joint representation by the public defender. In *People* v. *Chacon*, 69 Cal.2d 765, pp. 773-774 [73 Cal. Rptr. 10, 447 P.2d 106] the Supreme Court said: "The right to counsel at trial guaranteed by the Sixth Amendment of the United States Constitution [citations] and article 1, section 13 of the California Constitution does not include an automatic right to separate counsel for each codefendant. One counsel may represent more than one defendant so long as the representation is effective. [Citations.] Effective assistance of counsel is assistance 'untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests.' [Citations.] If counsel must represent conflicting interests or is ineffective because of the burdens of representing more than one defendant, the injured defendant has been denied his constitutional right to effective

counsel. [Citations.]'' If no adverse interest exists and none is claimed, the representation of both defendants by a single attorney is permissible. (*People* v. *Kerfoot,* 184 Cal.App.2d 622, 644-645 [7 Cal.Rptr. 674].)

The cases of *People* v. *Donohoe,* 200 Cal.App.2d 17 [19 Cal.Rptr. 454]; *People* v. *Douglas,* 61 Cal.2d 430, 436-437 [38 Cal.Rptr. 884, 392 P.2d 964]; *People* v. *Chacon,* 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106], cited in the majority opinion, in support of their reasons for reversal of the judgment, cannot be equated with the case at bench. In *Donohoe,* the defendant had three priors, the codefendant had none. In addition appointed counsel for both defendants stated to the court positively that there would be a definite conflict of interest. It was held that this objection was sufficient to require separate counsel. In *Douglas* the public defender moved for the appointment of separate counsel for the reason that there would be a conflict of interest. The codefendant in a related case was convicted of murder in a joint trial with Douglas, and Douglas was acquitted; the codefendant had a record of felony convictions while Douglas did not; codefendant was an habitual criminal, Douglas was not. In *Chacon,* in addition to the conflict that exists when the jury must fix the penalty, the Supreme Court observed that ''the facts of the case are fraught with potentially effective individual defenses,'' particularly ''self defense.''

The case at bench is analogous to *Glavin* v. *United States,* 396 F.2d 725. (U.S. appeal pending) In that case counsel for the defendants advised the trial court that perhaps there may be a conflict of interest and moved the court to be relieved as attorney for one of the defendants. But his statements only suggested that the problem was rather that one of counsel's two clients was dissatisfied and wished to replace him. The motion was denied. Upon appeal the court said at page 727:

''Appellants now contend that the motion was intended to advise the court that there was a conflict of interest between the two appellants and therefore representation of both by a single attorney would deprive them of effective assistance of counsel. Denial of such a motion is reversible error where there is some possibility that appellants have divergent interests so that one or both might not receive 'untrammeled and unimpaired' assistance from common counsel. (*Glasser* v. *United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 [at p. 699] (1942).

"But common representation is not error *per se*. There must be some possibility of conflicting interest, and hence of prejudice. [Footnote omitted.] Appellants did not identify any possible divergence of interest in the trial court; their briefs to this court suggest none; the government contends that no possible conflict could have existed; and we have found none in our examination of the record."

And so it is in the case before us. The defendants did not identify any possible divergence of interest in the trial court; their brief to this court suggests none; and there is none found in the examination of the record. The defendant Ruiz' statements and misstatements to the trial court were only indicative of a refusal to follow the advice of his counsel and his desire to replace him.

Furthermore counsel for the defendants represented to the court he could not find any conflict of interest. In determining the question of conflict of interest, the trial court must be able, and be freely permitted, to rely upon counsel's representations that the possibility of such a conflict does or does not exist. The necessary adequate representation of an accused by an attorney which the law requires, implies that the court may rely on the solemn representation of a fact made by such attorney as an officer of the court. (*Kaplan* v. *United States,* 375 F.2d 895, 897, cert. den. 389 U.S. 839 [19 L.Ed.2d 103, 88 S.Ct. 67].)

The majority opinion quotes from *Lollar* v. *United States,* 376 F.2d 243, 247 : " [O]nly where ' "we can find no basis in the record for an informed speculation" that appellant's rights were prejudicially affected,' can the conviction stand. . . . In effect, we adopt the standard of 'reasonable doubt,' a standard the Supreme Court recently said must govern whenever the prosecution contends the denial of a constitutional right is merely harmless error." It contends that the very error of not appointing separate counsel makes it so difficult for the defendants to point to tangible evidence of prejudice and that as recognized in *Lollar* "informed speculation" is all they have to work with in these cases. All they can see is the "tip of the iceberg." Whatever "informed speculation" means or is intended to mean as it applies to this case, the majority opinion predicates its decision mainly on speculation. This indeed would be an unfortunate precedent.

A reviewing court may not speculate whether or not there could have existed some possible conflict of interest not fac-

tually disclosed, or even suggested, by a careful reading of the record. (*Kaplan* v. *United States,* 375 F.2d 895, 898.)

The additional point raised by the appellants that the trial court abused its discretion by not ordering a separate trial for each defendant is not sustainable. When two or more defendants are jointly charged with a public offense they must be tried jointly, unless the court orders separate trials. (See Pen. Code, § 1098.) No motion for severance was made in the trial court; nor was there any reason for the court to order separate trials. In the absence of a showing as to why a severance should have been granted, the joint trial was proper. (*People* v. *King,* 255 Cal.App.2d 551, 556 [63 Cal.Rptr. 345]; *People* v. *Van Valkenburg,* 111 Cal.App.2d 337 [244 P.2d 750].)

I would affirm the judgment.

Respondent's petition for a hearing by the Supreme Court was denied March 19, 1969. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.