██ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. DAVID GAINES and RONALD SAUNDERS, Appellants.— Appeals from two judgments of the County Court, Westchester County, one rendered June 28, 1971 as to defendant Gaines and the other rendered August 4, 1971 as to defendant Saunders, convicting them of robbery in the second degree (two counts) and grand larceny in the third degree, upon a jury verdict, and sentencing them to a reformatory period of imprisonment on each count, to run concurrently. Two judgments affirmed. No opinion. Shapiro, Gulotta, Christ and Benjamin, JJ., concur; Martuscello, Acting P. J., dissents and votes to reverse the judgments and to order a new trial as to both defendants, with the following memorandum: I believe the trial court erred in not suppressing defendant Gaines' inculpatory statements and the toy gun discovered as a result of such statements. The minutes of the *Huntley* hearing and the trial indicate that Gaines was taken into custody at a delicatessen in connection with the holdup of complainant Fico. When Patrolman Rondina asked him if he knew his rights, Gaines responded by nodding his head affirmatively. Rondina then proceeded to detail the *Miranda* warnings to Gaines and asked if he understood them. Once again Gaines responded by nodding his head. After such procedures were completed at the delicatessen, the patrolman transported Gaines to the police station and delivered him into the custody of Detective Di Lieto, who was informed that Gaines had already been given his *Miranda* warnings. Di Lieto testified that shortly thereafter he accosted Gaines and demanded: " David * * * You have been identified * * * Let's don't monkey around. Where's the gun? Let's get things together here, straighten yourself out. * * * Make it easy on yourself. Where is the gun? " Although Gaines, who was 18 years old at the time, had twice denied involvement in any crime, in response to Di Lieto's demands, he finally said, after Di Lieto's third ultimatum, where he had thrown a toy gun allegedly used in the holdup. Thereafter, Gaines led Di Lieto and other policemen to the hedge where the toy gun had been abandoned. The record also reveals that Gaines refused to make a written statement. Based on this record, the trial court held that Gaines had knowingly and voluntarily waived his constitutional rights to remain silent and have an attorney present before any questioning would take place and, accordingly, his statements to Di Lieto were freely made. I disagree with that conclusion. In my opinion, the totality of circumstances clearly negates any conclusion that Gaines' " nodding acquaintance " with his constitutional rights constituted a voluntary and intelligent waiver. Waiver of one's rights under *Miranda* v. *Arizona* (384 U. S. 436, 444) is accomplished only if he relinquishes them understandingly, intelligently and by explicit and affirmative speech (*People* v. *Paulin,* 33 A D 2d 105, affd. 25 N Y 2d 445). Presuming waiver from a silent record is

impermissible (*Carnley* v. *Cochran,* 369 U. S. 506). In *People* v. *Jacobsen* (57 Misc 2d 1046), cited with approval in *People* v. *Paulin* (*supra,* p. 111), the defendant, when arrested for assault and robbery, was properly given the *Miranda* warnings and then asked (p. 1049): "Having been informed of these rights, are you now willing to answer questions before consulting a lawyer?"; to this he answered: "I don't need an attorney." Thereafter, he proceeded to answer the questions of the detectives, but refused to make a written statement. The trial court there held (correctly in my opinion) that the defendant's words "I don't need an attorney" did not amount to an affirmative waiver of his constitutional privilege against self incrimination (cf. *People* v. *Edwin R.,* 58 Misc 2d 13). Furthermore, it seems obvious that Di Lieto's aggressive actions and cajoling demeanor, after the *Miranda* warnings had been given Gaines, were designed solely to extract an inculpatory statement from the accused. That Gaines eventually made an inculpatory statement as a result of Di Lieto's compelling demands is totally inconsistent with any voluntary relinquishment of a constitutional privilege. Evidence that an accused was threatened, tricked, or cajoled into a waiver demonstrates that he did not voluntarily renounce his constitutional privileges. The requirement of warning and waiver of rights is fundamental with respect to the Fifth Amendment privilege and not simply a preliminary ritual to existing methods of interrogation (*Miranda* v. *Arizona,* 384 U. S. 436, 476, *supra*). I am also of the opinion that the convictions against both defendants should be reversed and a new trial ordered on the ground that, since there existed conflicting interests between the two defendants, they should not have been represented by the same trial counsel. As noted from the discussion above, with respect to Gaines' alleged waiver of his rights under *Miranda,* Di Lieto advised Gaines that he could make things "easy" on himself if he divulged the whereabouts of the gun. The *Huntley* hearing record also reveals that after Gaines led Di Lieto to where the toy gun had been abandoned, the latter said to him: "David, you cooperated this far and you showed us where the gun was, who was the other fellow with you at the time of the crime?" Gaines replied that his name was Saunders. Shortly thereafter, the latter voluntarily came into police headquarters, was arrested and charged with participating in the robbery of Fico. In my opinion, the action of Gaines in implicating Saunders created an obvious and material divergence of interest between them and mandated that each should have separate counsel. Since Gaines had allegedly implicated Saunders on the implied promise of leniency he had received from Di Lieto, logically, the interest of Saunders would be to seek to discredit his codefendant's statement (*People* v. *Sprinkler,* 16 A D 2d 705; cf. *United States* v. *Gougis,* 374 F. 2d 758; *Sawyer* v. *Brough,* 358 F. 2d 70; Ann. 34 ALR 3d 479–482). It is also my opinion that the trial testimony of complainant Fico raised questions as to the fact and/or extent of Saunders' involvement in the alleged holdup. The right to separate representation encompasses far more than inconsistent defenses. It may sometimes be required simply because one defendant is more heavily involved than another (*People* v. *Gallardo,* 269 Cal. App. 2d 86; Ann. 34 ALR 3d 503–507). Although at the trial neither defendant objected to being represented by the same attorney, such representation was so prejudicial that, in the interest of justice, the convictions of both defendants should be reversed and a new trial ordered as to both (*People* v. *Sprinkler,* 16 A D 2d 705, *supra*; cf. *People* v. *Jenkins,* 32 A D 2d 632).