[No. AO18771. First Dist., Div. Three. Mar. 8, 1983.]

ROCHELLE DIANE REID, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Lyle W. Johnson and McNamee, Allen & Johnson for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ronald E. Niver and Richard G. Tullis, Deputy Attorneys General, for Real Party in Interest.

OPINION

WHITE, P. J.—This petition challenges the trial court's denial of a motion to dismiss a criminal information (Pen. Code, § 995). It presents a challenge to appointment of one attorney to represent two defendants at a preliminary examination. We conclude that petitioner was illegally committed when the

magistrate failed to make an inquiry concerning conflict of interest after the issue was raised at the preliminary examination.

Petitioner and codefendant Wayne McAllister were charged by complaint with forgery (Pen. Code, § 470) and receiving stolen property (Pen. Code, § 496). At a preliminary examination held March 18, 1982, they were both represented by Donald V. Seratti of the Santa Clara County Public Defender's Office.

Three witnesses testified at the preliminary examination. The first, Daniel Hildreth, testified that on December 15, 1981, his truck was stolen along with his wallet and checkbook. He testified that a check made out to Granat Brothers Jewelers was not written or signed by him or with his permission.

At the end of Mr. Hildreth's cross-examination, codefendant McAllister spoke up: "Excuse me. Me and her have the same lawyer and I think that's a conflict of interest. We have the same lawyer. I don't have an attorney." The magistrate's response, in its entirety, was: "That's up to your attorney to declare a conflict. If I were you, I'd proceed for now with this proceeding." The attorney said nothing.

The second witness was then called. James McKenzie testified that he was working as a manager for Granat Brothers Jewelers on December 17, 1981, when petitioner and codefendant McAllister entered his store. One of them told McKenzie they wanted to look at watches. They looked at several watches before deciding to purchase a 14-karat Baume-Mercier watch valued at $2,100. Mr. McAllister explained that it was being purchased for petitioner.

At the time of the hearing, Mr. McKenzie could not remember where McAllister obtained the check he wrote to pay for the watch. However, his memory was refreshed by reading the report of Sheriff's Deputy Thomas Collins and he testified that petitioner handed a blank check to Mr. McAllister. Petitioner completed the check and signed Mr. Hildreth's name. He produced a driver's license and Visa card for identification.

Mr. McKenzie ran a credit check with the Fresno Credit Bureau but could not obtain sufficient information. He therefore called Visa and learned that the bank card was stolen. He called the police.

During the credit check the two defendants went into the shopping mall for some further shopping. Petitioner returned alone 30 to 45 minutes later and was detained by mall security officers.

Deputy Thomas Collins testified that both defendants were being detained when he arrived and that he and another deputy arrested them. Mr. McAllister had the credit card and driver's license in his wallet.

After the testimony concluded the defense attorney argued that the evidence was not sufficient to hold petitioner to answer because of ambiguity concerning her knowledge and participation. Both defendants were held to answer on both of the charged felonies.

In superior court petitioner moved to dismiss the information. The court permitted codefendant McAllister, represented by separate counsel in superior court, to join in the motion. The court denied the motions after argument. This petition followed.

Petitioner contends that because her alleged involvement in the crimes was less than that of her codefendant, she was entitled to separate representation. She cites *People* v. *Gallardo* (1969) 269 Cal.App.2d 86 [74 Cal.Rptr. 572], where the court stated (at p. 89): "It is now well settled that the concept of conflict of interest encompasses far more than inconsistent defenses. In *People* v. *Donohoe,* 200 Cal.App.2d 17 [19 Cal.Rptr. 454] it was pointed out that there is a right to separate representation simply because one defendant is more heavily involved than the other. This principle was one of the reasons for the reversal in *People* v. *Douglas,* 61 Cal.2d 430, 436-437 [38 Cal.Rptr. 884, 392 P.2d 964], and was definitively established in *People* v. *Chacon, supra* [(1968) 69 Cal.2d 765 (73 Cal.Rptr. 10, 447 P.2d 106)]."

The Attorney General responds that because petitioner did not raise an objection at the preliminary examination she is required to demonstrate actual conflict, which she cannot do. He contends also that even if petitioner need not show "actual conflict" she failed to meet the lesser burden of providing a factual basis for "informed speculation" that a potential conflict existed.

It is settled that if a defendant shows "that a conflict of interest actually affected the adequacy of his representation," he need not also demonstrate prejudice. (*Cuyler* v. *Sullivan* (1980) 446 U.S. 335, 349 [64 L.Ed.2d 333, 347, 100 S.Ct. 1708].) *Glasser* v. *United States* (1942) 315 U.S. 60 [86 L.Ed. 680, 62 S.Ct. 457] "established that unconstitutional multiple representation is never harmless error." (*Cuyler* v. *Sullivan, supra,* at p. 349 [64 L.Ed.2d at p. 347].)

Prior to the United States Supreme Court's decision in *Cuyler,* there were no clear answers to the questions of (1) what steps the court was required to take to assure that criminal defendants were not deprived of their rights to effective assistance of counsel by joint representation of conflicting interests, and (2)

how strong a showing of conflict the defendant was required to make. (*Holloway* v. *Arkansas* (1978) 435 U.S. 475, 483 [55 L.Ed.2d 426, 433, 98 S.Ct. 1173].) In *Holloway,* where defense counsel advised the court that a conflict existed and the court failed to appoint separate counsel or to take adequate steps to ascertain the nature of the risk posed by the conflict, the Supreme Court found that the defendants were deprived of their constitutional right to the assistance of counsel. (*Id.,* at p. 484 [55 L.Ed.2d at p. 434].) The court left open the two issues identified above, finding them pertinent only where trial counsel took no steps to advise the trial court of the actuality or possibility of a conflict. (*Id.,* at pp. 483-484 [55 L.Ed.2d at pp. 433-434].)

In *Cuyler,* the court addressed the issues left open. There, none of the three defendants objected to joint representation by two privately retained lawyers. On the first issue, the *Cuyler* court ruled that absent special circumstances or an objection to multiple representation the court had no obligation to initiate an inquiry into the propriety of the representation: "*Holloway* requires state trial courts to investigate timely objections to multiple representation. But nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. Indeed, as the Court noted in *Holloway, supra,* at 485-486, trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. 'An "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial."' 435 U.S., at 485, quoting *State* v. *Davis,* 1120 Ariz. 29, 31, 514 P.2d 1025, 1027 (1973). Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." (*Cuyler* v. *Sullivan, supra,* 446 U.S. 335, 346-347 [64 L.Ed.2d 333, 345-346].)

As to the second issue, the showing required of a defendant asserting conflict of interest, the *Cuyler* court made a distinction between a case where the defendant objected and one in which he did not. In its earlier decision in *Holloway,* where the defendant had objected and the court failed to appoint separate counsel or make a sufficient inquiry to assure that there was no conflict, no further showing of conflict was required to find the error prejudicial. (*Holloway* v. *Arkansas, supra,* 435 U.S. 475, 488-489 [55 L.Ed.2d 426, 436-437].) The *Cuyler* court tacitly acknowledged that rule but distinguished the situation where the defendant fails to object: "Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple

representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel. Such a presumption would preclude multiple representation even in cases where ' "[a] common defense . . . gives strength against a common attack." ' *Id.,* at 482-483, quoting *Glasser* v. *United States,* 315 U.S. 60, 92 (1942) (Frankfurter, J., dissenting).

■ "In order to establish a violation of the Sixth Amendment, a defendant who raises no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." (*Cuyler* v. *Sullivan, supra,* 446 U.S. 335, 348 [64 L.Ed.2d 333, 346-347].)

Relying upon *Cuyler,* the Attorney General argues that because petitioner did not object to joint representation she is required to show that an actual conflict of interest existed. In deciding this petition, it is critical to determine whether petitioner is to be classified as one who failed to object to joint representation, as argued by the Attorney General, or whether she can rely upon the objection made by her codefendant.

In *Cuyler,* none of the jointly represented defendants objected. Thus, the court could reasonably find that "[n]othing in the circumstances of this case indicates that the trial court had a duty to inquire whether there was a conflict of interest." (*Id.,* at p. 347 [64 L.Ed.2d at p. 346].) In seeking to apply *Cuyler* here the Attorney General implicitly argues that the magistrate owed only codefendant McAllister a duty to inquire and that his breach of the duty owed to McAllister had no impact upon petitioner's rights.

One possible interpretation of the decision in *Glasser* v. *United States, supra,* 315 U.S. 60, is that a defendant who fails to object may not rely upon abridgment of an objecting codefendant's rights. There the court reversed the conviction of Glasser, the objecting defendant, but not of Kretske, the defendant who failed to object. However, *Glasser* differs from this case in two important respects: (1) defendant Kretske not only did not object to joint representation but also assented to the court's suggestion that Glasser's counsel be appointed to represent him as well (*Id.,* at p. 69 [86 L.Ed. at p. 698]), and (2) on appeal, Kretske did not claim *his* constitutional rights had been abridged, but at most argued that violation of Glasser's rights prejudiced him as an alleged coconspirator. (*Id.,* at p. 77 [86 L.Ed. at p. 702]; *Holloway* v. *Arkansas, supra,* 435 U.S. 475, 489 [55 L.Ed.2d 426, 437].)

We cannot categorize petitioner as a nonobjecting defendant within the contemplation of *Cuyler.* When codefendant McAllister raised an objection, the

magistrate was required to determine the basis for the objection and either to satisfy himself there was no potential for conflict of interest or to appoint separate counsel. After the magistrate brushed aside Mr. McAllister's objection petitioner had no reason to expect he would respond differently to any objection she raised. In essence, the magistrate informed both defendants that their perceptions of conflict were immaterial because it was "up to [their] attorney to declare a conflict." Unlike Mr. Kretske in *Glasser,* petitioner was never asked if the joint representation satisfied her. Petitioner was given no reasonable opportunity to demonstrate the existence of an actual or potential conflict of interest.

■ The Attorney General argues that even codefendant McAllister's objection was too insubstantial to demonstrate a potential conflict of interest. He notes that Mr. McAllister indicated he wanted separate counsel because he wished to have "his own attorney" and that while he asserted a "conflict of interest," he did no more than state a legal conclusion. The Attorney General observes that his conclusion was not supported by his own attorney, who was invited by the magistrate to declare a conflict if one existed.

The courts have accorded great deference to a defense attorney's opinion concerning the existence of a conflict of interest. (*People* v. *Barboza* (1981) 29 Cal.3d 375, 378 [173 Cal.Rptr. 458, 627 P.2d 188].) As explained in *Holloway* v. *Arkansas, supra,* 435 U.S. 475, 485-486 [55 L.Ed.2d 426, 435-436], "since the decision in *Glasser,* most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted. [Citations.] In so holding, the courts have acknowledged and given effect to several interrelated considerations. An 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.' [Citation.] Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem. [Citation.] Finally, attorneys are officers of the court, and ' "when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." ' [Citation.] (Emphasis deleted.)"

We agree that an attorney's declaration of a conflict of interest is to be accorded great deference. But it does not follow that an attorney's failure to declare a conflict deserves the same deference, absent inquiry by the court. An attorney's silence may reflect unawareness of his or her legal obligation to declare a conflict. Where this silence is at the preliminary examination, it may signal only that the attorney was recently handed the file and had not yet explored the possibility of a conflict of interest.

As explained in *People* v. *Cook* (1975) 13 Cal.3d 663, 671 [119 Cal.Rptr. 500, 532 P.2d 148]: "When a trial court undertakes to appoint counsel for indigent codefendants [citation], it must assume the burden of assuring that its appointment does not result in a denial of effective counsel because of some possible conflict. [Citations.]" The burden on the court is not met by transferring all responsibility to the appointed attorney. Where one of the joint clients raises an objection, the court must satisfy itself that counsel has made a fully informed determination that no conflict exists. The fact that the client does not fully articulate the reasons for the conflict does not excuse the court from performing its duty.

*People* v. *Gallardo, supra,* 269 Cal.App.2d 86, illustrates that the trial court cannot rely wholly upon defense counsel's judgment that no conflict exists and cannot require expert articulation by the defendant. There the deputy public defender asked to be appointed to represent both defendants and disagreed with their statements to the court that there was a conflict of interest. The court listened to the objection of one of the defendants but refused separate counsel. The *Gallardo* court excused the defendant's failure to properly present his request, stating: "at no time were either Gallardo or Ruiz advised of the various situations which would entitle them to separate representation. Therefore any failure on their part to verbalize a request for separate counsel correctly and to give adequate reasons for it cannot be held against them on this appeal." (*Id.,* at p. 88.) Concerning the defense attorney's views, the court stated: "while the public defender's good faith is not doubted in the least, he was simply wrong when he informed the court that there was no conflict." (*Id.,* at p. 89.)

If the trial court in *Gallardo* was not permitted to rely upon a defense attorney's good faith opinion that no conflict exists, it follows, a fortiori, that the magistrate here could not assume no conflict merely because the attorney remained silent when his client objected.[1]

Two final questions remain: (1) Does the same obligation rest upon the magistrate as upon the trial court; and (2) is a defendant illegally committed if the magistrate fails to make a proper inquiry when an objection to joint representation has been made.

---

[1]We note that the United States Court of Appeals for the Eighth Circuit has exercised its supervisory authority to hold that federal trial courts must specifically warn defendants of potential dangers of joint representation and must afford them an opportunity to inquire of the court as to the nature and consequences of such representation. The appellate court "will seldom, if ever, find a knowing and intelligent waiver of conflict of interest unless an adequate record has been made that the court conducted such an inquiry." (*United States* v. *Unger* (8th Cir. 1981) 665 F.2d 251, 256.) The warning apparently is required even if counsel is retained and is given whether or not there is an objection. We need not consider whether such a broad rule should be adopted in California.

## Obligation of the Magistrate

█ Most of the case law concerning conflict of interest in joint representation of criminal defendants discusses only conflict of interest during trial. However, the constitutional right involved is the right to the assistance of counsel, a right which attaches at all critical stages of the prosecution, including the preliminary examination. (See *Coleman* v. *Alabama* (1970) 399 U.S. 1, 9-10 [26 L.Ed.2d 387, 396-397, 90 S.Ct. 1999].) Both federal and state courts have recognized that conflict of interest can affect a defendant's right to counsel at any critical stage. (See *Holloway* v. *Arkansas, supra,* 435 U.S. 475, 489-490 [55 L.Ed.2d 426, 437-438]; *United States* v. *Mavrick* (7th Cir. 1979) 601 F.2d 921, 931; *People* v. *Elston* (1982) 130 Cal.App.3d 721, 730 [182 Cal.Rptr. 30].)

In *Holloway* v. *Arkansas, supra,* 435 U.S. 475, 489-490 [55 L.Ed.2d 426, 438], the court cited the general rule that a defendant was entitled to the assistance of counsel at every critical stage and explained: "That an attorney representing multiple defendants with conflicting interests is physically present at pretrial proceedings, during trial, and at sentencing does not warrant departure from this general rule. Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, in this case it may well have precluded defense counsel for Campbell from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. . . ."

The significance of an attorney's role prior to the filing of an information cannot be minimized. During that phase of the proceedings counsel should be investigating defenses, planning and perhaps carrying out attacks upon the prosecution's case, and seeking to negotiate a favorable disposition for a client who is contemplating a change of plea. None of these tasks can be properly performed by an attorney who represents clients with conflicting interests. Thus, the court's duty to satisfy itself that an objecting defendant is receiving conflict-free representation is not merely a trial court duty, but applies to the magistrate as well.

## Legality of the Commitment

█ The Attorney General argues that because petitioner has not shown that her defense was prejudiced by the joint representation, she was not illegally committed by the magistrate. He notes that in *Little* v. *Superior Court* (1980) 110 Cal.App.3d 667 [168 Cal.Rptr. 72], the court found that relief under Penal Code section 995 was warranted where the defendant's attorney was unprepared and did not participate on the defendant's behalf. He argues that there

the irregularity was established, whereas here petitioner cannot show an irregularity because she has not shown an *actual* conflict of interest.

It should be noted that the Attorney General does not argue that no conflict existed, only that petitioner failed to show an actual conflict. However, that failure may have been due at least in part to the manner in which the magistrate brushed off Mr. McAllister's objection. Where the magistrate has an obligation to protect the defendant from representation by counsel with conflicting duties and fails to fulfill that obligation, the defendant cannot be faulted for failing to show an actual conflict of interest.

In *Jackson* v. *Superior Court* (1982) 135 Cal.App.3d 767, 770-771 [185 Cal.Rptr. 766], this court considered the circumstances under which a defendant's commitment by a magistrate should be considered "illegal" within the meaning of Penal Code section 995: "Penal Code '[s]ection 995 provides in relevant part that upon motion the information "must" be set aside by the court in which the defendant is arraigned if it appears "That before the filing thereof the defendant had not been legally committed by a magistrate."' (*Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 878 . . . .) The *Jennings* court explained the phrase 'legally committed' as follows: ' ". . . An information, of course, will not be set aside merely because there has been some irregularity or minor error in procedure in the preliminary examination. (*People* v. *Rodrigo*, 69 Cal. 601 . . . .) But where it appears that, during the course of the preliminary examination, *the defendant has been denied a substantial right,* the commitment is unlawful within the meaning of section 995, and it must be set aside upon timely motion. [Citations.]" (Italics added.)

" 'Applying these rules in a variety of contexts, the courts have held that an accused was not "legally committed" when he was denied the right to the assistance of counsel at the preliminary hearing (*People* v. *Napthaly* (1895) 105 Cal. 641, 644-645 . . . ; *McCarthy* v. *Superior Court* (1958) 162 Cal.App.2d 755, 758-759 . . . ; *People* v. *Williams* (1954) 124 Cal.App.2d 32, 38 . . . ; Pen. Code, § 866.5), when he was not advised by the magistrate, as required by section 859, of his right to such counsel (*People* v. *Miller* (1932) 123 Cal.App. 499, 501-502 . . . ; *People* v. *Salas* (1926) 80 Cal.App. 318 . . .), when the magistrate both listened to argument by the prosecution and ruled on the motion to dismiss the information without notifying the defendant's counsel (*People* v. *Hellum* (1962) 205 Cal.App.2d 150, 153-154 . . .), when the magistrate denied the defendant a reasonable continuance to permit him to send for counsel, as required by section 860 (*People* v. *Phillips* (1964) 229 Cal.App.2d 496, 501-502 . . .) or granted the prosecution's unsupported motion for a one-day continuance to secure a witness, in violation of the command of section 861 to complete the hearing "at one session" (*People* v. *Bucher* (1959) 175 Cal.App.2d 343 . . .), or when the magistrate allowed an

unauthorized person to remain in the courtroom during the hearing, after the defendant had moved to exclude all such persons under section 868 (*People* v. *Elliot* (1960) *supra,* 54 Cal.2d 498 . . .).' (*Id.,* 66 Cal.2d at pp. 874-875.)"

In *Jackson,* this court concluded that a defendant who was denied a full hearing by the magistrate on his nonstatutory motion to dismiss for prearrest delay was not illegally committed because he was not denied the chance to present an affirmative defense. However, case law has firmly established that the right to counsel at the preliminary examination is a substantial right, denial of which will lead to an illegal commitment. (See cases cited in *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 523 [165 Cal.Rptr. 851, 612 P.2d 941].)

We acknowledge that because there was no showing of actual conflict, it cannot be said with certainty that petitioner was represented by counsel who had a conflict.[2] However, where, as here, the magistrate's breach of his obligation has prevented the defendant from making a showing of actual conflict, the defendant has been denied a substantial right.

Let a peremptory writ of prohibition issue restraining the trial court from taking any further action on the information other than to dismiss it.

Feinberg, J., and Barry-Deal, J., concurred.

---

[2]In his oral and written arguments, the Attorney General stressed that even as late as the hearing on the motion to dismiss the information, the public defender's office refused to declare a conflict. He misreads the record of that hearing. In context, it appears that the conflict the public defender refused to declare was a conflict between attorney and client based upon his representation of Mr. McAllister on a motion which attacked his own performance at the preliminary examination. The Attorney General's interpretation of the record ignores the fact that at the motion to dismiss petitioner and codefendant McAllister were separately represented. At that time any discussion of present conflict of interest could not have referred to joint representation of defendants with conflicting interests. Arguably, the discussion could have related to the possible conflict of the public defender representing Mr. McAllister while possessing knowledge he had previously obtained from petitioner during his representation of her. However, the public defender's determination that he could continue to represent Mr. McAllister no more proves lack of conflict than did his silence during the preliminary examination. It may only signify that he received no confidential communication from petitioner or that he did not fully appreciate the obligation to declare a conflict or understand the circumstances which cause conflict.