Filed 5/19/21  P. v. Perez CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>NICHOLAS ALEXANDER PEREZ,<br><br>     Defendant and Appellant. | B301078<br>(Los Angeles County<br> Super. Ct. No. BA474623) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michal R. Johnsen, Supervising Deputy Attorney General, and Blythe J. Leszkay, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant Nicholas Alexander Perez was convicted by jury of one count of first degree residential burglary (Pen. Code, § 459)[1] and sentenced to four years imprisonment.  On appeal from the judgment, he contends: (1) because the instruction was not supported by substantial evidence, the trial court erred in giving a modified version of CALCRIM No. 376, which permitted the jury to consider defendant's constructive possession of stolen property as evidence of guilt; and (2) the court's supplemental instruction in response to the jury's request to define the term "enter a house" for purposes of burglary usurped the jury's function as finder of fact.  We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Prosecution Evidence*

Around 8:00 p.m. on August 25, 2017, Miyoun Kwon returned home from work.[2]  After remotely opening the gate to the driveway and parking her car, Miyoun walked to the front door of her home.  As she approached the front door, Miyoun noticed that a sliding glass window to the left of the door was ajar, and one of the window screens had been placed on the ground.  The window had not been in that position when she left for work in the morning.  Miyoun unlocked the front door and noticed that the lock was difficult to turn.

---

[1]     Unspecified references to statutes are to the Penal Code.

[2]     For ease of reading, we refer to the victims by their first names.

After Miyoun opened the front door, she noticed that a backpack usually kept in her daughter's room was by the door, and that shoes and other items were scattered about on the floor. Miyoun walked through the home and found that the kitchen cabinets and bedroom drawers had been opened. Miyoun called her husband, Kang, and told him that someone had broken into their home. A few minutes later, their daughter Audrey came home from a dinner out.[3] Kang arrived home about 20 minutes thereafter.

Los Angeles Police Department Officer Steve Kim, who responded to the residence, observed that the front left window appeared to be off its rail, and a screen to the window was sitting on the ground. Audrey testified that she could "probably fit" through the opened window. A forensic specialist lifted a palm print from the outside of the window. After running the print through an automated identification system to search for a possible match, print specialist Jose Lainez obtained defendant's palm print as the first out of 10 potential candidates. After comparison, Lainez determined that the palm print was defendant's, a determination that was confirmed by a second analyst and reviewed by a supervisor. At trial, at the request of defense counsel, Lainez rolled defendant's finger and palm prints. After further comparison, Lainez concluded that the left palm print rolled in court matched the palm print pulled from the window.

---

[3] Audrey testified that she had left the family home around 6:00 p.m. When she left, Audrey recalled locking the front door and closing the gate.

Miyoun, Kang, and Audrey determined that an iPad and a red cooler or ice box were among the many items of personal property missing from their home.[4] "[W]hat really stood out" to Miyoun as missing was the red cooler, which had been sitting on top of a kitchen shelf. Also, Kang found it odd that the cooler had been stolen, given its little monetary value. Miyoun, Kang, and Audrey did not know defendant, and none of the victims had given him permission to enter their home.

Prior to his arrest, defendant lived with his mother in an apartment, which Officer Kim estimated was approximately three miles away from the victims' house. None of the items reported stolen were found in the possession of defendant or his family members.

However, following his arrest, on September 7, 2017, defendant called his mother from jail to ask for money to be placed into his jail account. On the recorded phone conversation, defendant's mother told him that she had no money to put into his account. After that, a woman who was identified in the call as "Vanessa" came on the line. She also told defendant that she did not have money to give him. Defendant responded, "Go, go sell the iPad." He added, "I, I have one. Right there in the, in the, in the ice cooler." When Vanessa replied that she would try to sell the iPad, defendant changed his mind and said, "nah don't sell it yet."

---

[4] Other items of stolen property included jewelry, eyeglasses, wallets, laptops, headphones, a camera, a designer purse, and cash. Kang valued the missing property at approximately $14,000.

4

2.    *Defense Evidence*

Defendant's mother, Aura Ramirez, testified that she had given defendant an iPad as a gift. According to Ramirez, defendant "always" kept the iPad inside an underwear and sock drawer in his room. Ramirez also owned a blue cooler, which she kept on her balcony.

## DISCUSSION

1.    *Possession of Recently Stolen Property Instruction (CALCRIM No. 376)*

Defendant contends the trial court erred in instructing the jury pursuant to a modified version of CALCRIM No. 376, which permitted the jury to consider defendant's constructive possession of stolen property as evidence of guilt. According to defendant, although in his telephone call from custody he told Vanessa to "go sell the iPad" which was "[r]ight there in the . . . ice cooler," and then told her "don't sell it yet," there was no logical inference that the iPad and ice cooler to which he referred were the same iPad and ice cooler taken in the burglary. We disagree.

A.    *Relevant Proceedings*

After the People rested their case-in-chief at trial, the prosecution requested that the court give an instruction on possession of recently stolen property as evidence of a crime (CALCRIM No. 376). Defense counsel objected to the instruction, and argued, inter alia, that the evidence failed to establish that the iPad and cooler referenced in the recorded conversation were stolen. Counsel noted that iPads and

5

coolers were ubiquitous—"probably most people own both of these items." After submitting on the instruction, the prosecutor requested that it be modified to include language on constructive possession.

The court overruled defense counsel's objection and instructed the jury with a modified version of CALCRIM No. 376 as follows:

> "If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of burglary based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed that crime.
>
> "The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of that crime.
>
> "Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt.
>
> "A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it either personally or through another person."

## B.  *Analysis*

A party is entitled to a requested instruction if it is supported by substantial evidence. (*People v. Mitchell* (2019) 7 Cal.5th 561, 583.) Evidence is "[s]ubstantial" for this purpose if it is "sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8; see

6

also *People v. Cole* (2004) 33 Cal.4th 1158, 1206 [substantial evidence contemplates the jury's ability to reasonably deduce facts from the evidence presented at trial].)

"'[P]ossession of stolen property, accompanied by no explanation, . . . or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. The rule is generally applied where the accused is found in possession of the articles soon after they were stolen.' [Citations.]" (*People v. McFarland* (1962) 58 Cal.2d 748, 754.) The relevant jury instruction explaining this principle, CALCRIM No. 376 (and its predecessor, CALJIC No. 2.15), may be given whenever the charged crime is theft, burglary, or knowingly receiving stolen property. (*Ibid.*; accord, *People v. Johnson* (1993) 6 Cal.4th 1, 36–37 (*Johnson*), disapproved on other grounds in *People v. Rogers* (2006) 39 Cal.4th 826.)

The instruction on possession of recently stolen property warns the jury not to infer guilt merely from a defendant's possession of recently stolen goods, "without at least some corroborating evidence tending to show the defendant's guilt." (*People v. Snyder* (2003) 112 Cal.App.4th 1200, 1225; *People v. Barker* (2001) 91 Cal.App.4th 1166, 1174.) The instruction reiterates the prosecution's burden of proving each fact essential to guilt "beyond a reasonable doubt and contains no limitation on the evidence that may be considered in determining" if it has done so; the instruction "tell[s] the jury to consider *all* relevant evidence." (*People v. Anderson* (2007) 152 Cal.App.4th 919, 948.)

7

In the instant case, the evidence amply supported the court's instruction. It undisputed that someone burglarized the victims' home and stole personal property worth $14,000. Two of the items stolen were an iPad and a red ice chest or cooler. (See *People v. Perrin* (1967) 247 Cal.App.2d 838, 843 [corpus delicti for burglary met when evidence established forcible entry and stolen money], disapproved on another ground in *People v. Charles* (1967) 66 Cal.2d 330.)[5] It is also undisputed that defendant's palm print was discovered on the point of entry, the left front window of the home.

In this context, defendant's recorded jail conversation was highly incriminating. The conversation disclosed that defendant was keeping the iPad referred to not in a place which would permit ready use, but concealed in an ice cooler. It is also noteworthy that although appellant's mother testified that she had given defendant an iPad as a gift, she also testified that defendant "always" kept the iPad inside in an underwear and sock drawer in his room. Obviously, even if this testimony that defendant legally possessed an iPad were believed, it nonetheless bolstered the inference that the iPad to which defendant referred in his recorded conversation was not the one his mother gave him (which was "always'" kept in a bedroom drawer), but another iPad which, because it was stolen, defendant kept concealed in an ice cooler—the ice cooler also stolen in the burglary.

---

[5] The jury was instructed on the corpus delicti rule. (CALCRIM No. 359.)

Finally, in the recorded conversation, defendant first instructed Vanessa to "go sell the iPad," then later changed his mind and said, "nah don't sell it *yet*." (Italics added) These remarks suggested that his whole purpose in possessing the iPad was to sell it at some point. Of course, stolen property is frequently sold by the thief or on his or her behalf so as to make the theft profitable or obtain money for other needs.

In short, the commonsense inference from defendant's recorded conversation was that he constructively possessed the iPad and ice cooler taken in the burglary of the victims' home. This evidence amply supported CALCRIM No. 376.

Defendant contends, however, that there are no cases in which CALCRIM No. 376 "or its predecessor [CALJIC No. 2.15] . . . was given and the recently stolen property was not identified as the specific property taken during the commission of the charged offense or offenses." Even were this true, it would not change the result here. Regardless, in *Johnson*, the court rejected the notion that an instruction on possession of stolen property is inappropriate unless specific property taken during in the theft is identified as being in the defendant's possession. In that case, the victims had been robbed of jewelry. After the crime, the defendant was seen wearing gold jewelry, and he told his girlfriend he had assaulted and robbed the victims. (*Johnson*, *supra*, 6 Cal.4th at pp. 15, 36–37.)

On appeal, the appellant argued that the trial court erred in instructing on possession of stolen property (CALJIC No. 2.15), because the prosecution "introduced no evidence establishing that he possessed

9

any of the victims' [stolen] jewelry." (*Johnson, supra*, 6 Cal.4th at p. 37.) The Court rejected the argument, concluding that although the jewelry defendant had been wearing could not be positively traced to the victims, under the circumstances the appellant's possession of gold jewelry, and his statement to his girlfriend were sufficient to support the instruction. (*Ibid.*; see also *People v. Mosqueira* (1970) 12 Cal.App.3d 1173, 1176 [fact that defendant was occupying one of the victim's seats at football game "compels the inference that he had been in possession of" football tickets that were stolen from the victims' Cadillac].) Here, although the iPad and ice cooler to which defendant referred in his recorded conversation were not specifically identified as being those taken in the burglary, it could reasonably be inferred, on the whole record, that they were. Thus, there was no error in giving CALCRIM 376.

2.    *Supplemental Instruction on "Enter a House"*

Defendant contends the trial court prejudicially erred in violation of his right to a jury trial by improperly responding to the jury's mid-deliberation question, "How do you define 'enter a house' in terms of a burglary?" He asserts that the supplemental instruction "unfairly and unnecessarily focused" the jury's attention to the area in which his palm print had been located. We disagree.

A.    *Relevant Proceedings*

Using CALCRIM No. 1700, the trial court instructed the jury on burglary as follows:

> "The defendant is charged in Count One with burglary in violation of . . . section 459.
> "To prove that the defendant is guilty of this crime, the People must prove that:
> "1.  The defendant entered a house; [¶] AND
> "2.  When he entered the house he intended to commit theft.  [¶]  . . .  [¶]
> "Under the law of burglary, a person enters a building if some part of his or her body penetrates the area inside the building's outer boundary.
> "A building's outer boundary includes the area inside a window screen."

During deliberations, the jury submitted two questions, the first being, "must we definitely accept that the defendant placed his hand on the window between 6-8 p.m., on the day of the crime [in order to convict him of burglary]?"  With agreement by the parties, the court answered, "Please consider all of the evidence and all of the jury instructions."

Shortly thereafter, the jury asked, "How do you define 'enter a house' in terms of a burglary?"  The court informed counsel that it intended to answer the question as follows:  "Please consider [CALCRIM] Instruction No. 1700, including the portion:  'A building's outer boundary includes the area inside a window screen.'  Consider also all [of] the other instructions."  Defense counsel objected to the answer, and requested that the court stated, "Please consider

11

Instruction Number 1700." The court overruled the objection and gave its proposed answer.

When the jury returned its verdict, the court identified an irregularity on the verdict forms. The court explained that the jury had filled out a guilty verdict form and not guilty verdict form for burglary, and had scratched out the signature on the not guilty form and written "void" with the foreperson's initials.

The court inquired of the foreperson about the verdict forms, and the following exchange ensued:

> "[FOREPERSON]: Sure. The jury came to a conclusion earlier in the day, and upon clarification of the terms 'entered into the house,' which you clarified for us, and upon a closer examination of all the evidence, the jury at that point changed its decision.
>
> "THE COURT: Okay. When you filled out the not guilty verdict form, at that point were deliberations still continuing at that point? I guess you had not formally reached a verdict, or had you?
>
> "[FOREPERSON]: There was an initial vote, at which point I filled out the form. And in discussing the second charge, which was the charge of attempted burglary—I'm sorry, the lesser charge, we reevaluated the burglary and revisited factors in the trial."

The foreperson confirmed the jury's final verdict was guilty for first degree residential burglary.

Outside the presence of the jury, defense counsel moved for a mistrial, and argued that the court's answer quoting a portion of CALCRIM No. 1700 "direct[ed] them to the area inside a window screen, improperly commented on the evidence and improperly directed

12

a verdict." The court responded that its answer was appropriate because it did not refer the jury to anything other than a particular sentence in an agreed upon jury instruction. The court denied the motion for mistrial. At defense counsel's request, the jury was polled, and each juror affirmed they had voted for the guilty verdict.

B. *Analysis*

Section 1138 imposes a duty on the trial court, when asked, to aid the jury in understanding the legal principles it is asked to apply.[6] (*People v. Beardslee* (1991) 53 Cal.3d 68, 97 (*Beardslee*).) This duty ""'does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under [Penal Code] section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information." [Citation.]'" (*People v. Lua* (2017) 10 Cal.App.5th 1004, 1016 (*Lua*).)

The trial court must be mindful of the possibility that trial counsel "may have befuddled the jury as to the law." (*People v. Chung* (1997) 57 Cal.App.4th 755, 758.) Unlike counsel, however, the court must not appear to be an advocate by either endorsing or redirecting the jury's inclinations. (*People v. Moore* (1996) 44 Cal.App.4th 1323, 1331 (*Moore*).) "But a court must do more than figuratively throw up its

---

[6] Section 1138 provides, inter alia, that if the jury "desire[s] to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given."

13

hands and tell the jury it cannot help. . . . It should decide as to each jury question whether further explanation is desirable, or whether it should merely reiterate the instructions already given." (*Beardslee*, *supra*, 53 Cal.3d at p. 97.) We review potential errors under section 1138 for abuse of discretion. (*Lua*, *supra*, 10 Cal.App.5th at p. 1016.)

The trial court properly exercised its discretion in this case. The jury's question expressed confusion over the legal concept of entry for purposes of burglary. (See *People v. Smithey* (1999) 20 Cal.4th 936, 981 [a word having "'legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning'"].) The court's response to the question—directing the jury to CALCRIM No. 1700 and noting that for purposes of entry, a building's outer boundary includes the area inside a window screen—was legally sound. (See *People v. Valencia* (2002) 28 Cal.4th 1, 12 ["a window screen is clearly part of the outer boundary of a building for purposes of burglary"], overruled on another ground in *People v. Yarbrough* (2012) 54 Cal.4th 889; *Magness v. Superior Court* (2012) 54 Cal.4th 270, 279 ["[a] person, a foot, a hand, or a tool can 'enter'" a building by penetrating its outer boundary].) By simply repeating the language appearing in CALCRIM No. 1700 (to which defendant has not objected), the response was also sufficiently tailored to the question posed.

To the extent defendant asserts the supplemental instruction relieved the jury from making the determination on the elements of burglary, we disagree. The instruction itself discussed a legal principle and did not comment on the evidence. (*People v. Mosher* (1969) 1 Cal.3d

379, 398 [instruction on legal principle does not constitute a judicial comment on the truth or falsity of the evidence of the crime for which it was given].) The context in which the instruction was given forecloses any notion that the court invaded the jury's province as a factfinder. (See *Moore*, *supra*, 44 Cal.App.4th at pp. 1330–1331 [courts do not review jury instructions in isolation, but in context of the entire record].) The court had previously instructed the jurors on multiple occasions that they alone were to decide the facts based only on the evidence presented at trial. (CALCRIM No. 220.) The court also cautioned the jury that nothing it said should be interpreted as an indication of the court's opinion on the evidence, on the appropriate verdict, or on whether certain principles or instructions were more important than others. (CALCRIM Nos. 220, 3550.) The jury had a copy of the written version of those instructions, and we presume the jury understood and correlated them with the supplemental instructions it received. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

*United States v. Gaudin* (1995) 515 U.S. 506 (*Gaudin*), a case on which defendant relies, is inapposite. *Gaudin* found reversible error in the trial court's instruction that the jury had to assume the truth of an element of the charged crime. (*Id.* at pp. 507–508, 522–523.) The court's supplemental instruction in this case did precisely the opposite, leaving it to the jury to determine whether the element of entry had been proven.

15

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY J.